99 N.J. Super. 22 (1968)
238 A.2d 482
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIE LEE BROWN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 15, 1968.
Decided January 25, 1968.
*25 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Sam Weiss for appellant (Mr. Achilles J. Grassano, assigned counsel, attorney).
Mr. Barry H. Evenchick, Assistant Prosecutor, for respondent (Mr. Brendan T. Byrne, Essex County Prosecutor, attorney).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Defendant Willie Lee Brown appeals from his conviction for robbery, N.J.S. 2A:141-1, while armed with a dangerous weapon, N.J.S. 2A:151-5.
On July 8, 1966, at approximately 3 A.M., one George Hulsizer, a taxi driver, was robbed at knife point by two passengers who had directed him to drive to 37 Randolph Place, Newark. When they arrived there one of them, a Negro, locked his arm around Hulsizer's neck, held a knife to his throat and directed his white companion to take his money. After his money had been taken Hulsizer was stabbed by the man who had held him, sustaining a puncture wound for which he was later treated at a hospital and released. He testified that $13 in singles was taken from him.
When his assailants fled, Hulsizer attempted to follow them while calling for assistance on his cab radio. Although the police responded, the two robbers seemingly had disappeared into one of several alleys that separated the houses on Girard Place, an intersecting street. Shortly thereafter the barking of dogs drew Officers Gabriel and Teer to the rear *26 of property on Clinton Place, the next street east of Girard Place. Upon investigating they perceived two men attempting to conceal themselves behind the cars in a two-car garage. Upon being ordered out they identified themselves as defendant Willie Lee Brown (a Negro) and John Joseph Forlenza (a Caucasian). Upon checking the garage Gabriel found six one-dollar bills lying on the floor near where defendant and Forlenza had been standing. He testified that Brown admitted at the scene that this money was his. Among the objects found in Forlenza's possession when he was "patted down" were seven one-dollar bills. Both Brown and Forlenza were indicted but the latter pleaded guilty. At the trial Hulsizer identified Brown as one of the passengers who had robbed him. Brown did not take the stand and produced no witnesses.
Defendant first contends that the six one-dollar bills found on the garage floor were erroneously received in evidence because the State failed to establish the chain of possession which was a prerequisite to their admission. They were produced by the prosecutor from an unsealed envelope upon which Patrolman Gabriel had written the name "Willie Brown." Although both remembered that it had been done, neither Gabriel nor Teer could recall which one of them had put the six one-dollar bills in the envelope and neither could positively state that the six one-dollar bills found in the envelope on the day of trial were the same six which had been retrieved from the floor of the garage and placed therein by one of them. There was testimony that they had listed the items found on Brown and Forlenza on a police property voucher. These were then put in two envelopes, on one of which had been written the name of Willie Brown and on the other the name of Forlenza. They were then turned over to the desk lieutenant who would send them to the police property room for safekeeping. Neither the dollar bills nor the envelopes had been initialed by either officer and no one was called to testify as to the custody of the envelope between the time it was turned in and the time of trial.
*27 The six one-dollar bills produced by the State constituted real evidence and as a prerequisite to their receipt into evidence the State was required to show that they were what they purported to be, i.e., the ones found on the garage floor and acknowledged by Brown. The rule thus stated is one of "inherent logical necessity" rather than consideration of sufficiency of evidence. 7 Wigmore, Evidence (3d ed. 1940), § 2129, pp. 564-569. If the bills produced at the trial were not, in fact, the bills found in the garage they had no logical relation to the facts incidental to which they were introduced. Adherence to the cited rule is important because of a "general mental tendency, when a corporal object is produced as proving something, to assume, on sight of the object, all else that is implied in the case about it." Wigmore, op. cit., at p. 565. Thus, where the incriminating object has passed out of the possession of the original receiver and into the possession of others, the "chain of possession" must be established to avoid any inference that there has been substitution or tampering. State v. Johnson, 90 N.J. Super. 105, 113 (App. Div. 1965), affirmed 46 N.J. 289 (1966). Whether the requisite chain of possession has been sufficiently established to justify admission of the exhibit is a matter committed to the discretion of the trial judge, and his determination will not be overturned in the absence of a clearly mistaken exercise thereof. State v. Kollarik, 22 N.J. 558, 565-566 (1956); West v. United States, 359 F.2d 50, 55 (8 Cir. 1966), certiorari denied 385 U.S. 867, 87 S.Ct. 131, 17 L.Ed.2d 94 (1966); Brewer v. United States, 353 F.2d 260, 262 (8 Cir. 1965).
An examination of the record convinces us that here there has been no such mistaken exercise of discretion. While the proper foundation for the admission of such real evidence requires a showing of an uninterrupted chain of possession, it is not necessary for the party introducing such evidence to negate every possibility of substitution or change in condition between the event and the time of trial, especially where as here, the custodian has been an arm of the State. The question *28 is one of reasonable probability that no tampering has occurred. Breeding v. State, 220 Md. 193, 151 A.2d 743 (Ct. App. 1959). Generally it is sufficient if the court finds in reasonable probability that the evidence has not been changed in important respects, West v. United States, supra, 359 F.2d, at p. 55; Brewer v. United States, supra, 353 F.2d, at p. 262, or is in substantially the same condition as when the crime was committed, Reed v. United States, 377 F.2d 891, 893 (10 Cir. 1967). Here there is no suggestion of irregularity or tampering during the time which elapsed between the placing of the money in the envelope and its delivery to the officer in charge of police property and its subsequent delivery to the prosecutor. Cf. Nixon v. State, 204 Md. 475, 105 A.2d 243 (Ct. App. 1954). Nor is defendant's argument based upon any contention that six one-dollar bills were not retrieved from the garage floor and acknowledged by Brown.
In so holding we are not to be considered as approving as good practice the omission here to clearly identify the exhibit in question and more completely establish each step in the "chain of possession." Evidence in the form of money should be initialed or otherwise identified wherever possible, and should be placed in envelopes which are dated, identify the contents, and bear the signature or initials of the person who placed it there. Such envelopes should be sealed and if, during the period of custody, the seal is broken, it is highly preferable that an explanation thereof should be affixed or otherwise furnished by the person breaking the seal, after which the envelope should be resealed. We are advised of no reason why the property custodian of the police department could not have been called to testify here.
Defendant next urges that the trial court erroneously abridged the cross-examination of Officer Gabriel. Specifically, he asserts that he was precluded from obtaining an answer to the question, "Was the money [found by Gabriel] in Brown's possession?" We find the point to be without merit. Gabriel had already testified that he did not find the money *29 in Brown's actual possession but on the floor of the garage adjacent to where Brown and his companion had been standing. No question of credibility was involved in that regard. The trial judge is allowed a broad discretion in determining the extent of cross-examination, State v. Pontery, 19 N.J. 457, 473 (1955), although, generally, liberality should be exercised in the scope of cross-examination allowed a defendant in a criminal case. Here the judge properly found that the ground had been adequately covered. We see no reason to overturn his ruling and, in any event, defendant suffered no prejudice thereby. R.R. 1:5-1(a) and (b); State v. Witte, 13 N.J. 598, 612-613 (1953), certiorari denied 347 U.S. 951, 74 S.Ct. 675, 98 L.Ed. 1097 (1954); Lawlor v. Kolarsick, 92 N.J. Super. 309, 311 (App. Div. 1966), certification denied 48 N.J. 356 (1966).
Defendant next asserts that the prosecutor's statement in his opening that defendant had plunged the knife into Hulsizer's chest called for a mistrial, the denial of which amounted to prejudicial error. Not so. While what actually transpired might have been more accurately stated by the prosecutor, we are satisfied that defendant sustained no prejudice by the words used. The exact nature and extent of the wound inflicted was fully developed during presentation of the State's case and the jury could not have been misled.
We find none of the remaining arguments advanced by defendant to be meritorious. His contention, supported by his post-trial affidavit, that he was not allowed to testify at the trial, as well as his criticism of his trial counsel, afford no ground for setting aside the verdict in this direct appeal.
Affirmed.