969 A.2d 487 (2009)
407 N.J. Super. 40
STATE of New Jersey, Plaintiff-Respondent,
v.
David MOSNER, Defendant-Appellant.
No. A-1650-07T4
Superior Court of New Jersey, Appellate Division.
Argued February 9, 2009.
Decided May 4, 2009.
*490 Donald J. Rinaldi, argued the cause for appellant (DiBiasi & Rinaldi, attorneys, Nutley; Mr. Rinaldi, on the brief).
Gregory R. Mueller, Assistant Prosecutor, argued the cause for respondent (David J. Weaver, Sussex County Prosecutor, attorney; Mr. Mueller, of counsel and on the brief).
Before Judges R.B. COLEMAN, SABATINO and SIMONELLI.
The opinion of the court was delivered by
SIMONELLI, J.A.D.
The State charged defendant with two criminal offenses stemming from a hit-and-run snowmobile accident that left a teenage boy seriously injured: fourth-degree assault by motor vehicle (snowmobile), N.J.S.A. 2C:12-1c(1) (count one); and fourth-degree leaving the scene of a motor vehicle accident, N.J.S.A. 2C:12-1.1 (count *491 two). Defendant was also charged with five motor vehicle offenses: operating a snowmobile on a public street or highway, N.J.S.A. 39:3C-17b; operating an unregistered snowmobile, N.J.S.A. 39:3C-3 and N.J.S.A. 39:3C-5; failure to report an accident resulting in injury to or death of any person, or damage to property, N.J.S.A. 39:4-130 and N.J.S.A. 39:3C-21; leaving the scene of an accident resulting in injury or death to any person, N.J.S.A. 39:4-129(a) and N.J.S.A. 39:3C-21; and reckless driving, N.J.S.A. 39:4-96.
Defendant applied for admission to the Sussex County Pre-Trial Intervention Program (PTI). The Sussex County prosecutor consented to defendant's admission conditioned on, among other things, his guilty plea to the five motor vehicle charges. Defendant agreed to plead guilty to all motor vehicle offenses except leaving the scene of an accident resulting in injuries of any person, which carried a mandatory 180-day term of imprisonment. Defendant appealed the prosecutor's decision to a Law Division judge, who denied the appeal.
A jury subsequently convicted defendant on the criminal counts. The trial judge convicted defendant on all five motor vehicle charges. The judge sentenced defendant to a 270-day term of imprisonment in the Keough-Dwyer Correctional Facility on count two; to a consecutive two-year term of probation with a 60-day term of imprisonment on count one to be satisfied by his participation in the Sheriff's Labor Assistance Program; to a concurrent 60-day term of imprisonment on the reckless driving charge; and to a concurrent 180-day term of imprisonment and a concurrent two-year driver's license suspension on the leaving the scene of an accident charge. The judge also imposed the appropriate assessments, fines and penalties, ordered restitution to the victim, and suspended defendant's driver's license for thirty months.
On appeal, defendant raises the following contentions:
POINT ONE
DEFENDANT SHOULD BE ADMITTED INTO THE PTI PROGRAM BECAUSE THE PROSECUTOR ABUSED HIS DISCRETION AND VIOLATED GUIDELINE 4 OF RULE 3:28 BY CONDITIONING DEFENDANT'S ENTRY INTO PTI ON A GUILTY PLEA TO THE UNDERLYING MOTOR VEHICLE OFFENSES.
POINT TWO
THE TRIAL JUDGE ERRED IN DENYING THE DEFENDANT'S REQUEST TO ADMIT THE PHOTOGRAPHS TAKEN BY THE STATE INTO EVIDENCE.
POINT THREE
THE TRIAL JUDGE ERRED BY NOT GRANTING THE DEFENDANT'S RENEWAL OF THE MOTION TO SUPPRESS AT TRIAL BECAUSE THE AFFIDAVIT IN SUPPORT OF THE SEARCH WARRANT WAS BASED ON AN ILLEGAL SEARCH.
POINT FOUR
THE TRIAL JUDGE ERRED BY NOT GRANTING THE DEFENDANT'S RENEWAL OF THE MOTION TO SUPPRESS AT TRIAL BECAUSE THERE WAS NO PROBABLE CAUSE TO ISSUE THE SEARCH WARRANT.
POINT FIVE
THE TRIAL COURT ERRED BY ADMITTING THE PANTS ALLEGEDLY *492 WORN BY DAVID MCINNIS INTO EVIDENCE.
We reject these contentions and affirm.
The following facts are summarized from the record. On March 6, 2003, at approximately 7:00 p.m., David McInnis left his home on Goodale Road in Andover Township to walk his dog. Having snowed that day, there was approximately six inches of snow on the road that had not yet been plowed. McInnis wore a pair of waterproof snow pants over a pair of jeans, a t-shirt and sweatshirt and snow boots, and carried a flashlight. He and his dog exited his driveway and walked onto Goodale Road near its intersection with Iliff Road, facing oncoming traffic approaching from the south.
After proceeding approximately 400 feet on Goodale Road, McInnis saw the light of a snowmobile and heard its engine. The vehicle was traveling toward him at approximately forty or fifty miles per hour. McInnis stopped walking and began waving his flashlight at the snowmobile; however, the driver of the snowmobile did not slow down or change direction. The snowmobile struck McInnis and continued north on Goodale Road toward the intersection of Lake Iliff Road. The collision knocked the teenager to the ground, injuring his right leg. In severe pain and bleeding, and unable to stand or walk, McInnis dragged himself, yelling for help.
McInnis was eventually spotted by a snowplow truck driver, who called the police. The snowplow driver also observed a left front rudder snowmobile track in the center of the road in the vicinity where McInnis lay, and snowmobile tracks on Goodale Road that continued to a soccer field off that road.
An ambulance subsequently brought McInnis to the hospital where x-rays revealed a serious compound fracture of his right tibia and fibula requiring surgery and the insertion of two titanium pins. A doctor indicated that the injury "usually would be associated with a high impact, high force injury."
At approximately 7:25 p.m., Lieutenant Alan Monaco of the Andover Township Police Department arrived at the scene and spoke to McInnis and the snowplow driver. The officer saw two twenty to twenty-five foot snowmobile tracks in the roadway, facing north. While investigating the incident, Monaco received a radio transmission that a resident of Goodale Road had reported seeing someone erratically operating a snowmobile in the soccer field area directly across from her house. Monaco responded to that location and observed "[c]risp[,] [c]lean pristine [snowmobile] tracks, which were just made[,]" in the soccer field area and an adjacent parking lot, which appeared to be from one snowmobile. The tracks proceeded through the soccer field and parking lot areas and continued over a snow embankment and then onto Goodale Road, heading south.
Monaco followed the tracks south on Goodale Road, turned left onto Route 206 south, and then turned left onto Limecrest Road, heading north. The officer then turned left onto Lake Iliff Road, heading west back toward Goodale Road. While traveling on Lake Iliff Road toward Goodale Road, the officer saw snowmobile tracks to his right in the area of Lake Iliff. The tracks crossed the road and entered the lower parking lot of Hillside Park, where snowmobiles were not permitted. The officer entered the parking lot and followed the tracks to the upper area of the park. There he saw snowmobile tracks "in pristine condition[,] ... [v]ery sharp, crisp track marks[,]" which appeared to be from one snowmobile.
*493 Defendant's home, located at 140 Lake Iliff Road, borders Hillside Park and is about one-half mile from the scene of the accident. Defendant is well-known in Andover Township, once serving as the mayor. His brother was a member of the Andover Township Police Department and at the time of the accident, defendant was an Andover Township Committee member with oversight of the police department, including "budget ... salary negotiations... promotions [and] discipline." Defendant was also known to have illegally operated his snowmobile in Hillside Park in the past which, according to Monaco, was "something that was ... overlooked [by the police]."
Shortly after 8:00 p.m., Monaco went to defendant's home. As he drove up defendant's driveway, he saw two sets of snowmobile tracks going into Hillside Park. The tracks appeared to be the same as those he saw on Goodale Road and in the park's parking lot.
The officer also saw an "Artic Cat" snowmobile parked outside a barn on defendant's property with damage to the right side of the windshield and with no snow on it. He also saw a "[f]resh[,] [c]risp; pristine [track]" leading to the snowmobile, which was one of the contiguous tracks he had observed leading from defendant's driveway into Hillside Park. He saw no other snowmobile tracks. The officer then proceeded to defendant's home and spoke to defendant's wife, who said that defendant was not home, and that he had been riding his snowmobile at around 6:00 p.m.
Monaco then proceeded to Newton Memorial Hospital to see McInnis. While at the hospital, Monaco took McInnis's snow pants, which had a black mark on one of the legs. The officer placed the pants in a bag, brought the bag to the police station, and marked it as evidence. The officer then went back on patrol and continued searching the area until 3:00 a.m. for more or other snowmobile tracks. He found none.
On the evening of March 7, 2003, the Sussex County Prosecutor's Office seized defendant's snowmobile pursuant to a search warrant. Sergeant Timothy Cooney of the prosecutor's office photographed the vehicle and the snowmobile tracks on defendant's property. On the morning of March 8, 2003, the officer photographed the snowmobile tracks in Hillside Park and in the soccer field area off Goodale Road.
On March 10, 2003, Detective-Sergeant Thomas McCormick, supervisor of the New Jersey State Police Crime Scene Investigation North Unit, took additional photographs of defendant's snowmobile. The next day, he photographed the scene of the accident and the snowmobile tracks from defendant's property. He also took aerial photographs of the area. The officer followed the snowmobile tracks through Hillside Park and determined that they originated from behind the tennis courts, continued onto the soccer field, crossed over and went through the field behind the Andover Police Department, continued through the field and into the woods, and then continued through the woods to the soccer field on Goodale Road. McCormick concluded that the tracks were from one snowmobile.
On March 13, 2003, McCormick took additional photographs of the snowmobile. He also collected and delivered to the Prosecutor's Office the front portion of the snowmobile's metal bumper, the right and left rubber handles, and a piece of fiberglass from the front of the snowmobile. On March 14, 2003, Cooney brought the evidence McCormick had collected and the bag containing McInnis's snow pants to the State Police Laboratory for analysis.
*494 George W. Chin of the New Jersey State Police Office of Forensic Science, an expert in forensic science, including forensic chemistry and trace evidence analysis, examined the evidence to determine if any transfer occurred from the snowmobile items to the pants. He made three significant findings: (1) a black impression on the left snow pant leg compared in physical dimensions with pinstripes on the snowmobile's metal bumper; (2) the black material removed from the impression compared to the black pinstripes on the bumper; and (3) a fabric impression on the black pinstripe of the bumper compared in physical dimensions to the weave pattern in the pants. Chin opined that the first two findings showed a transfer from one object to another and that the third finding indicated that there was "a high velocity impact or transfer of fabric impression or pattern onto the [bumper]." He concluded that these findings confirmed the probability of contact between the snowmobile and the pants.
On May 16, 2003, Detective Joseph Costello of the Sussex County Prosecutor's Office went to Elite Auto in Byram Township and photographed an abandoned "Artic Cat" snowmobile with a missing front left ski that had been reported to the Andover Township police. After examining the vehicle, Costello concluded that nothing indicated this snowmobile's involvement in the accident.
Defendant testified at trial. He admitted operating his snowmobile at the time of the accident, but denied doing so on Goodale Road. He also denied hitting McInnis. The jury found otherwise.

I.
We first address defendant's challenge to the prosecutor's decision about his PTI admission. The victim and his family opposed defendant's PTI admission. Nevertheless, the Criminal Case Manager found defendant an acceptable PTI candidate and recommended his admission for eighteen months subject to, among other things, his guilty plea to the motor vehicle charges of operating a snowmobile on a public street and operating an unregistered snowmobile. The Criminal Case Manager later amended his recommendation to include a guilty plea to all five motor vehicle charges. Defendant was willing to plead guilty to all motor vehicle charges except leaving the scene of an accident resulting in injuries of any person.
The prosecutor acknowledged that defendant had very good background credentials, including his charitable and public service work as an elected member of the Andover Township governing body. However, after evaluating the criteria in N.J.S.A. 2C:43-12e(1) to (17) and the Rule 3:28 Guidelines, the prosecutor found defendant to be a "marginally acceptable" PTI candidate. The prosecutor would only consent to defendant's PTI admission on the condition that defendant would, among other things, plead guilty to the motor vehicle charge of leaving the scene of an accident resulting in injury to any person.
The prosecutor reasoned that defendant was an unapologetic public official who illegally operated his snowmobile in the area of the Police Department he oversaw. The prosecutor also found that, despite overwhelming evidence of defendant's guilt, he refused to accept any responsibility for striking and seriously injuring McInnis, and for knowingly leaving the scene of the accident. The prosecutor concluded that the guilty plea was necessary for the victim, his family, the community and the public's confidence in the criminal justice system.
*495 Defendant concedes the inapplicability of PTI to Title 39 offenses. See also State v. Negran, 178 N.J. 73, 83, 835 A.2d 301 (2003). However, he argues that because the motor vehicle charge of leaving the scene of an accident resulting in injury or death to any person arises out of the same conduct and incident as the fourth-degree criminal charge of leaving the scene of a motor vehicle accident, pleading guilty to the motor vehicle charge is tantamount to pleading guilty to the criminal charge. He concludes that requiring a guilty plea to the motor vehicle charge violates Rule 3:28, Guideline 4.
Defendant also argues that pleading guilty to the motor vehicle charge would require him to serve a mandatory 180-day term of imprisonment, which "flies in the face of reason and contradicts the entire purpose, intent and spirit of the PTI Program." He concludes that requiring a guilty plea to the motor vehicle charge violates Rule 3:28, Guideline 1(a), (b) and (d).
Finding that defendant's failure to meet Guideline 4's concern for acceptance of responsibility for behavior as part of the PTI rehabilitation process, the trial judge concluded that defendant failed to clearly and convincingly show that the prosecutor's decision was a patent and gross abuse of discretion.
We first emphasize that PTI does not apply to motor vehicle offenses. Negran, supra, 178 N.J. at 83, 835 A.2d 301. Accordingly, the prosecutor abused no discretion in requiring a guilty plea to the motor vehicle charges, notwithstanding the penal consequences. Even if PTI did apply to motor vehicle offenses, we discern no abuse of discretion here.
PTI is a diversionary program designed to `augment the options of prosecutors in disposing of criminal matters ... [and] provide applicants with opportunities to avoid ordinary prosecution by receiving early rehabilitative services or supervision, when such services or supervision can reasonably be expected to deter future criminal behavior by an applicant.'

[State v. Motley, 369 N.J.Super. 314, 320, 848 A.2d 875 (App.Div.2004) (quoting State v. Brooks, 175 N.J. 215, 223, 814 A.2d 1051 (2002)).]
To gain admission, a defendant must obtain a positive recommendation from the PTI director and the consent of the prosecutor. Ibid.
In making a PTI determination, the prosecutor must evaluate the criteria set forth in N.J.S.A. 2C:43-12e and the Rule 3:28 Guidelines. Negran, supra, 178 N.J. at 80-81, 835 A.2d 301 (2003) (citations omitted). As part of that determination, the prosecutor must "assess a defendant's `amenability to correction' and potential `responsiveness to rehabilitation.'" State v. Watkins, 193 N.J. 507, 520, 940 A.2d 1173 (2008) (citing N.J.S.A. 2C:43-12b).
A "[d]efendant generally has a heavy burden when seeking to overcome a prosecutorial denial of his admission into PTI." Ibid. (citing State v. Nwobu, 139 N.J. 236, 246-47, 652 A.2d 1209 (1995)). In order to overturn a prosecutor's rejection, a defendant must "`clearly and convincingly establish that the prosecutor's decision constitutes a patent and gross abuse of discretion.'" State v. Hoffman, 399 N.J.Super. 207, 213, 943 A.2d 910 (App.Div.2008) (quoting State v. Watkins, 390 N.J.Super. 302, 305, 915 A.2d 561 (App.Div.2007), aff'd, 193 N.J. 507, 940 A.2d 1173 (2008)). See also Negran, supra, 178 N.J. at 82, 835 A.2d 301; Brooks, supra, 175 N.J. at 225, 814 A.2d 1051; Nwobu, supra, 139 N.J. at 246, 652 A.2d 1209; Motley, supra, 369 N.J.Super. at 321, 848 A.2d 875. "A patent and gross abuse of discretion is defined as a decision *496 that `has gone so wide of the mark sought to be accomplished by PTI that fundamental fairness and justice require judicial intervention.'" Watkins, supra, 193 N.J. at 520, 940 A.2d 1173 (quoting State v. Wallace, 146 N.J. 576, 582-83, 684 A.2d 1355 (1996)). "Ordinarily, an abuse of discretion will be manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment." State v. Bender, 80 N.J. 84, 93, 402 A.2d 217 (1979).
Prosecutors are granted "wide latitude in deciding whom to divert into the PTI program and whom to prosecute through a traditional trial." Negran, supra, 178 N.J. at 82, 835 A.2d 301. We afford the prosecutor's decision great deference. Wallace, supra, 146 N.J. at 589, 684 A.2d 1355; State v. Leonardis, 73 N.J. 360, 381, 375 A.2d 607 (1977); State v. Kraft, 265 N.J.Super. 106, 111, 625 A.2d 579 (App.Div.1993). For that reason, "[t]he scope of judicial review of a decision to reject a PTI application is `severely limited.'" Hoffman, supra, 399 N.J.Super. at 213, 943 A.2d 910 (App.Div.2008). See also Leonardis, supra, 73 N.J. at 381, 375 A.2d 607. A trial court can only overturn a prosecutor's decision to deny PTI upon finding a patent and gross abuse of discretion. Kraft, supra, 265 N.J.Super. at 112-13, 625 A.2d 579.
The fundamental question before us is whether, under the circumstances of this case, the prosecutor could condition defendant's PTI admission on a guilty plea to a motor vehicle charge carrying a mandatory term of imprisonment. "Enrollment in PTI programs should be conditioned upon neither informal admission nor entry of a plea of guilty. Enrollment of defendants who maintain their innocence should be permitted unless the defendant's attitude would render pretrial intervention ineffective." R. 3:28, Guideline 4. See also N.J.S.A. 2C:43-12g. Rejection of PTI admission should only occur where "it is unlikely that behavioral change can occur as a result of short-term rehabilitative work." Pressler, Current N.J. Court Rules, comment on R. 3:28, Guideline 4.
Here, the prosecutor found defendant to be an acceptable candidate for PTI, albeit "marginally acceptable." Given the victim's and his family's opposition and the impact on society as a whole, the prosecutor required an admission of guilt to the motor vehicle charge. These considerations would have justified an outright denial of PTI admission, thus satisfying the prosecutor's desire to achieve deterrence and be responsive to concerns of the victim and the community. However, by the prosecutor's consent, defendant became an eligible PTI candidate. Accordingly, the prosecutor's review should have focused on whether defendant's attitude was such that PTI without a guilty plea would be rendered ineffective.
Based upon our careful review of the record, we are satisfied that the prosecutor had adequate grounds to deny defendant unconditional PTI admission. Despite compelling evidence of defendant's guilt, he refused to take any responsibility whatsoever for his actions, and he has expressed no remorse.[1] Accordingly, there is sufficient indicia that PTI was unlikely *497 to result in any behavioral change, and that defendant's attitude is such that unconditional PTI would not achieve the purposes of the statute.

II.
Defendant next challenges the judge's denial of his request to admit photographs of the abandoned snowmobile. Defendant claimed that a snowmobile operated by someone else struck McInnis. He argued that the photographs were relevant to his defense, and that given the lack of evidence directly proving his involvement in the accident, they could have raised a reasonable doubt about his involvement.
The trial judge barred the photographs, finding that defendant presented no nexus between the abandoned snowmobile and the accident. The judge rejected defendant's argument that since the prosecutor gave him the photographs through discovery there must be a nexus. Defendant declined the judge's offer to "open up the case" to provide the nexus.
"Except as otherwise provided in these rules or by law, all relevant evidence is admissible." N.J.R.E. 402. A defendant has the right to present a defense that someone else committed the crime. State v. Fortin, 178 N.J. 540, 590, 843 A.2d 974 (2004). This is known as third-party guilt, and this right "does not address whether specific evidence is admissible in support of such a defense." Id. at 591, 843 A.2d 974. "Third-party guilt evidence `need only be capable of raising a reasonable doubt of defendant's guilt' to warrant its admissibility." Ibid. (quoting State v. Koedatich, 112 N.J. 225, 299, 548 A.2d 939 (1988) (Koedatich II), cert. denied, 488 U.S. 1017, 109 S.Ct. 813, 102 L.Ed.2d 803 (1989)). "Stated more concretely, there must be `some link ... between the third party and the victim or crime,' `capable of inducing reasonable' people to regard the evidence `as bearing upon the State's case[.]'" Ibid. (quoting Koedatich II, supra, 112 N.J. at 300, 548 A.2d 939; State v. Sturdivant, 31 N.J. 165, 179, 155 A.2d 771 (1959), cert. denied. 362 U.S. 956, 80 S.Ct. 873, 4 L.Ed.2d 873 (1960)). The connection between the third party and the crime must be more than just conjecture. Ibid.
We agree that defendant failed to establish the necessary connection between the abandoned snowmobile and the crime committed. There is no evidence connecting the abandoned snowmobile to the accident. Rather, the overwhelming evidence indicates that defendant was the sole cause of the accident.

III.
Defendant next contends that the trial judge erred in denying his second motion, brought at the close of all evidence, to suppress the seizure of his snowmobile. He argues an entitlement to renewal of that motion because Monaco's trial testimony indicated that the officer illegally obtained the evidence supporting the search warrant.
Defendant also argues that Monaco testified to seeing tracks near the bottom of defendant's driveway during the application for the warrant, but at trial testified to driving up defendant's driveway without making such an observation. Defendant claims that Monaco could not have observed the tracks until he was well into defendant's driveway, and that the officer targeted him and drove onto his driveway in an effort to find evidence, without properly securing a warrant. Defendant also claims that no probable cause existed for the search warrant because the facts presented to the warrant judge did not provide *498 a logical nexus between the place to be searched and the crime investigated.
Denying defendant's motion, the trial judge stated that he did not "see anything new here that would indicate to the [c]ourt that this is an issue that demands a reconsideration of the question of the motion to suppress." The judge found that Monaco's personal knowledge of defendant's snowmobile use did not require him to obtain a warrant before proceeding to defendant's house to speak with him.
Our review of a trial judge's findings is "exceedingly narrow." State v. Locurto, 157 N.J. 463, 470, 724 A.2d 234 (1999) (citing State v. Johnson, 42 N.J. 146, 161-62, 199 A.2d 809 (1964)). We give great deference to the trial judge's factual findings and will not "engage in an independent assessment of the evidence as if [we] were the court of first instance." Id. at 471, 724 A.2d 234. We also give deference to the trial judge's credibility determinations. Id. at 474, 724 A.2d 234; Johnson, supra, 42 N.J. at 161, 199 A.2d 809. In reviewing a motion to suppress, we "must uphold the factual findings underlying the trial court's decision so long as those findings are `supported by sufficient credible evidence in the record.'" State v. Elders, 192 N.J. 224, 243, 927 A.2d 1250 (2007) (quoting Locurto, supra, 157 N.J. at 474, 724 A.2d 234); State v. Alvarez, 238 N.J.Super. 560, 562-64, 570 A.2d 459 (App. Div.1990). We will reverse only if we are convinced that the trial judge's factual findings are "so clearly mistaken `that the interests of justice demand intervention and correction.'" Elders, supra, 192 N.J. at 244, 927 A.2d 1250 (quoting Johnson, supra, 42 N.J. at 162, 199 A.2d 809.) "In those circumstances solely [we] `appraise the record as if [we] were deciding the matter at inception and make [our] own findings and conclusions.'" Ibid. (quoting Johnson, supra, 42 N.J. at 162, 199 A.2d 809). With these standards in mind, we continue our inquiry.
A motion to suppress evidence is properly made pursuant to Rule 3:10-2 before the trial. See also R. 3:5-7. A motion to suppress can be made a second time where "new evidence comes to light, which was unavailable at the time of the original hearing on the motion through no fault of the movant," that would affect the legality of the search. State v. Roccasecca, 130 N.J.Super. 585, 591, 328 A.2d 35 (Law Div.1974).
Based upon our careful review, we discern no reason to disturb the judge's ruling. Monaco's testimony before the warrant judge is almost identical to his trial testimony. Defendant's claims about the officer's testimony to the warrant judge are, at best, a misinterpretation. There was nothing new in Monaco's trial testimony to justify a second motion to suppress.
Even if such new evidence existed, the motion would fail. The Fourth Amendment and Art. I, par. 7 of the New Jersey Constitution protect individuals from unreasonable searches and seizures. State v. Davis, 104 N.J. 490, 498-99, 517 A.2d 859 (1986) (citing United States v. Sharpe, 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605, 613 (1985); State v. Bruzzese, 94 N.J. 210, 217, 463 A.2d 320 (1983), cert. denied, 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984)). "The protections of the Fourth Amendment are limited to a person's house and the `curtilage' of the house." State v. Nikola, 359 N.J.Super. 573, 581, 821 A.2d 110 (App. Div.), certif. denied, 178 N.J. 30, 834 A.2d 404 (2003) (citing United States v. Dunn, 480 U.S. 294, 300, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326, 334 (1987)). "`[W]hen the police [come] on to private property to conduct an investigation ... and restrict their movements to places visitors could be *499 expected to go (e.g., walkways, driveways, porches), observations made from such vantage points are not covered by the Fourth Amendment.'" Id. at 581-82, 821 A.2d 110 (quoting State v. Johnson, 171 N.J. 192, 209, 793 A.2d 619 (2002)).
We are satisfied that no illegal search occurred here and, thus, the search warrant was valid. In order to get to defendant's home from Lake Iliff Road, one must drive up a long driveway resembling a private road, continue on this driveway past defendant's house, then past another house (which defendant rents to a tenant), then around a bend, and then end at the front of defendant's home in his parking area. Monaco saw snowmobile tracks while going around the bend toward defendant's parking area. All the while, the officer was on defendant's property to conduct an investigation. He restricted himself to an area that visitors could be expected to go. There is nowhere to park on defendant's property other than the parking area. Defendant cannot argue that this search was illegal simply because his driveway causes a visitor to travel deeper onto his property than other driveways.
Further, "[b]efore issuing any warrant, a judge must be satisfied that there is probable cause to believe that a crime has been or is being committed at a specific location or that evidence of a crime is at the place to be searched." State v. Evers, 175 N.J. 355, 381, 815 A.2d 432 (2003). Probable cause "is `a well grounded' suspicion that a crime has been or is being committed' at a particular place." Ibid. (quoting State v. Waltz, 61 N.J. 83, 87, 293 A.2d 167 (1972)). "A search warrant is presumed to be valid, and defendant bears the burden of demonstrating that the warrant was issued without probable cause[.]" Ibid. (citing State v. Valencia, 93 N.J. 126, 133, 459 A.2d 1149 (1983)). Therefore, a reviewing court must give substantial deference to a judge's determination that probable cause existed to issue a search warrant. Ibid. When reviewing the validity of a search warrant the court must look to the totality of the circumstances to see if there was probable cause. State v. Novembrino, 105 N.J. 95, 122-23, 519 A.2d 820 (1987).
Here, the warrant only applied to the seizure and examination of defendant's snowmobile. Monaco's testimony to the warrant judge established probable cause to issue the search warrant.

IV.
Defendant next contends that the trial judge erred by admitting McInnis's snow pants into evidence. He argues that the State failed to prove the chain of custody and that the pants were not those worn by McInnis at the time of the accident. Defendant points to the lack of identification and the conflicting testimony about the color of the pants and the location of the black marks.
Defendant's arguments lack merit. Monaco identified the bag containing the pants at trial, the pants remained in the possession of the State police, and there was no evidence that the pants had been changed. Further, Chin's testimony, to which defendant did not object, provided the critical evidence about the pants and their connection to the accident. The trial judge was satisfied that the State proved chain of custody.
"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter is what its proponent claims." N.J.R.E. 901. "A party introducing tangible evidence has the burden of laying a proper foundation for its admission." *500 State v. Brunson, 132 N.J. 377, 393, 625 A.2d 1085 (1993). This foundation should include a showing of an uninterrupted chain of custody. Ibid. (citing State v. Brown, 99 N.J.Super. 22, 27, 238 A.2d 482, (App.Div.), certif. denied, 51 N.J. 468, 242 A.2d 16 (1968)). The determination of whether the State sufficiently established the chain of custody is within the discretion of the trial court. Brown, supra, 99 N.J.Super. at 27, 238 A.2d 482. Generally, evidence will be admitted if the court finds "in reasonable probability that the evidence has not been changed in important respects or is in substantially the same condition as when the crime was committed." Id. at 28, 238 A.2d 482 (citations omitted). "[A] defect in the chain of custody goes to the weight, not the admissibility, of the evidence introduced." State v. Morton, 155 N.J. 383, 446, 715 A.2d 228 (1998).
Our careful review of the record satisfies us that the State properly established a foundation for the admission of the pants into evidence. Defendant does not point to a specific gap in the chain of custody, nor does he show how the trial judge abused his discretion. He merely points to inconsistencies in the testimony. However, any inconsistencies go to the weight of the evidence, not its admissibility.
Affirmed.
NOTES
[1] In defendant's letter to the court that defense counsel mentioned at sentencing, defendant apparently only expressed remorse for his family and the victim and his family for having to go through the media attention the case brought about. The letter has not been supplied on appeal. Regret over publicity is a far cry from regret for wrongful conduct and the harm it inflicted.