**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0076-16T2

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

LYNDA STAMBAUGH-LUPO,

      Defendant-Appellant.

_____

      Argued September 18, 2017 — Decided October 26, 2017

      Before Judges Messano and Accurso.

      On appeal from the Superior Court of New
      Jersey, Law Division, Somerset County,
      Indictment No. 13-04-0169.

      Michael Confusione argued the cause for
      appellant (Hegge & Confusione, LLC, attorneys;
      Mr. Confusione, of counsel and on the briefs).

      Paul H. Heinzel, Assistant Prosecutor, argued
      the cause for respondent (Michael H.
      Robertson, Somerset County Prosecutor,
      attorney; Mr. Heinzel, of counsel and on the
      brief).

PER CURIAM

    A jury convicted defendant Linda Stambaugh Lupo of third-

degree theft, N.J.S.A. 2C:20-3(a). Defendant moved for a new

trial based on "newly discovered evidence," claiming police intentionally accessed email stored on her family's cellphones and other electronic devices during trial, including emails between her and her attorney, in violation of the Sixth Amendment. The judge denied the motion after conducting an evidentiary hearing, and sentenced defendant to a suspended 364-day term in the county jail, a four-year term of probation, $500 restitution and appropriate financial penalties.

On appeal, defendant presents the following points for our consideration.

> POINT 1
>
> THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE BEFORE THE JURY THE ALLEGED STOLEN ITEMS BECAUSE OF A GLARING LACK OF CHAIN OF CUSTODY, WARRANTING REVERSAL AND REMAND FOR A NEW TRIAL ON THE THEFT CHARGE.
>
> POINT 2
>
> THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR, AT LEAST, A NEW TRIAL, IN LIGHT OF DETECTIVE TAYLOR'S ARREST OF DEFENDANT IN THE MIDDLE OF TRIAL — THE NIGHT BEFORE SHE WAS TO TESTIFY, AND ON [THE] GROUND THAT THE PROSECUTION INVADED ATTORNEY-CLIENT PRIVILEGED EMAILS AND OTHER ELECTRONIC COMMUNICATIONS BETWEEN DEFENDANT AND HER TRIAL COUNSEL.

Having considered these arguments in light of the record and applicable legal standards, we affirm.

From 2009 to 2012, defendant provided in-home medical therapy to the victim, whose husband was a retired major league baseball player. These treatments were performed several days per week for several hours at a time in the basement of the victim's home, during which defendant would sometimes be left alone while the victim went upstairs to her bedroom to shower. When her husband became ill, the victim suspended the treatments to help care for him, but, by January 2013, her family contacted defendant to resume the treatments. The victim's husband passed away on January 29, 2013, and defendant began treating the victim again two days later.

The victim, however, noticed some unusual circumstances. For example, defendant suggested the therapy take place in the victim's bedroom, which had never occurred before. While the victim showered in the bedroom's bath, she could hear the alarm signal several times that the front door opened; yet, no one was in the house except defendant. On another occasion, the victim emerged from the shower to find defendant standing on the side of the bed opposite where the therapy was taking place.

The victim intended to inter her husband with some jewelry of special significance. On February 4, she and other family members searched in vain for the jewelry box where her husband

kept these pieces. Unable to find it, the victim called the police.

Police arrived at the victim's home on February 5 and spoke to her regarding what items were missing and who had access to her bedroom. Defendant was also there and agreed to accompany police to the station, where she provided a taped statement that was played for the jury. Although defendant originally denied taking anything, she ultimately admitted that the victim's jewelry was in a plastic supermarket bag in defendant's home. Detectives pressed for details as to how much jewelry she took, but defendant stated, "I honestly don't know[.] I didn't look, I honestly didn't look[.] I haven't had a chance to do anything . . . . I just put it into the bag."

Police secured a search warrant for defendant's home and found the bag as described in the "mudroom." It contained some jewelry engraved with the deceased husband's initials and a department store receipt with the victim's name. Police found more than two hundred pieces of jewelry throughout the house, some in Ziploc bags, and they found sports memorabilia, including a glove and a baseball signed by Hank Aaron, in the basement.

Police seized approximately one hundred pieces of jewelry and the baseball glove and autographed ball, which the lead detective placed in the trunk of his car and took to police headquarters.

4

Without inventorying the evidence, he locked it in one of the interview rooms, for which he had the only key. Police initially permitted the victim and her niece to enter the interview room without accompaniment to look through the seized items. The victim later identified the items and provided details about some of the jewelry to police, who documented her identification and photographed the items.

Police permitted the victim to take the identified items and baseball memorabilia home and returned the unidentified items to defendant. Some weeks later, the victim supplied police with a list of other items that she could not locate in her home. The State argued that defendant was also responsible for the theft of these items.

Sometime before trial, police went to the victim's home, to take the jewelry for professional appraisal and to permit defendant's inspection of the baseball and glove. A few days later, the victim called police and told them the glove she had given them was not the same one she identified at police headquarters months earlier. The State notified defendant of the mistake.

At trial, the victim identified and provided details as to when she had last seen some of the seized items prior to February 4, 2013. The prosecutor posed no questions about the autographed

5

baseball during direct examination of the victim, however, on cross-examination, it became apparent that the victim had supplied a different baseball to police. Although the State agreed it would not offer the baseball in evidence, the judge held an N.J.R.E. 104 hearing at defendant's request outside the presence of the jury. The victim explained the reason for her mistake.

The lead detective testified that he picked up the jewelry from the victim for appraisal but did not inventory the items before securing them in a locker at police headquarters. He then left for vacation and another detective actually took the jewelry for appraisal.

At the end of the State's case, defendant objected to the admission of the jewelry in evidence, but not the baseball glove; the State did not seek to admit the autographed baseball. Although she expressed concerns about the chain of custody, the judge ultimately decided to admit the evidence. Citing in particular our decision in State v. Brown, 99 N.J. Super. 22 (App. Div.), certif. denied, 51 N.J. 468 (1968), the judge concluded any defects in the chain of custody did not affect admissibility but only the jury's evaluation of the weight of the evidence.

Defendant elected not to testify, but her husband did. He was home when police executed the search warrant. He identified photos of a baseball autographed by Hank Aaron that he purchased

on Ebay and displayed in his home. He also identified a photo of a baseball glove that he purchased for his son. Additionally, defendant's husband described an ongoing in-home business that the couple conducted that included the purchase of jewelry and other items for resale. He claimed defendant kept some of these items in bags in the mudroom and around the house.

In summation, defense counsel argued that the baseball glove was too small to fit a major league ballplayer and surmised it was defendant's son's. He urged the male jurors to try the glove on and see if it felt like one "worn by a professional baseball player." He also vigorously attacked the chain of custody for all the evidence, implying that most of the items were not the victim's, and suggesting that someone else must be responsible for having stolen the missing items that police never recovered. He highlighted the appraised value of the jewelry actually recovered, which was less than $500.

In Point I, defendant contends the admission in evidence of the jewelry and baseball glove was reversible error because "there was not just a 'defect' in the chain of custody but a complete absence of foundation and no showing of uninterrupted chain of custody . . . as required by New Jersey law." We disagree.

"[A] trial court's evidentiary rulings are entitled to deference absent a showing of an abuse of discretion, i.e., there

7

has been a clear error of judgment." State v. Nantambu, 221 N.J. 390, 402 (2015) (quoting State v. Harris, 209 N.J. 431, 439 (2012)). "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter is what its proponent claims." N.J.R.E. 901.

"The determination of whether the State sufficiently established the chain of custody is within the discretion of the trial court." State v. Mosner, 407 N.J. Super. 40, 62 (App. Div. 2009); see also Brown, supra, 99 N.J. Super. at 27 ("Whether the requisite chain of possession has been sufficiently established to justify admission of the exhibit is a matter committed to the discretion of the trial judge, and his determination will not be overturned in the absence of a clearly mistaken exercise thereof."). Generally speaking, the proponent of the evidence must show an uninterrupted chain of custody. Mosner, supra, 407 N.J. Super. at 62.

Nonetheless, "the State is not obligated to negate every possibility of substitution or change in condition of the evidence." State v. Brunson, 132 N.J. 377, 393 (1993). The evidence will usually be admitted "if the court finds in reasonable probability that the evidence has not been changed in important respects or is in substantially the same condition as when the

crime was committed." Mosner, supra, 407 N.J. Super. at 62 (citations omitted). Defects in the chain do not negate admissibility but go instead to the weight of the evidence. Ibid. (citing State v. Morton, 155 N.J. 383, 446 (1998), cert. denied, 532 U.S. 931, 121 S. Ct. 1380, 149 L. Ed. 2d 306 (2001)).

Here, defendant argues there were breaks in the chain of custody when police left the victim and her niece in the interrogation room alone with the jewelry, when they returned items to the victim's possession and when the lead detective left items in police headquarters without documentation and another detective took them for appraisal. The victim, however, identified photographs of the jewelry taken after she identified the pieces at police headquarters and before the items were returned, and she identified specific items shown to her at trial which were in those photos.

"When an item of evidence is not fungible but is instead easily identifiable, no chain of custody issue is presented." Biunno, Weisbard & Zegas, Current N.J. Rules of Evidence, comment 2 on N.J.R.E. 901 (2017) (citing State v. B.H., 290 N.J. Super. 588, 595 (App. Div. 1996), rev'd in part on other grounds sub nom., State v. Hoffman, 149 N.J. 564 (1997)). In other words, defendant never claimed the nature or character of the evidence was altered between when it was seized and when it was introduced

at trial.  Mosner, supra, 407 N.J. Super. at 62.  Rather, she claimed the actual items of jewelry were either never stolen from the victim or never recovered in defendant's home.  Simply put, the argument made at trial had little to do with admissibility of the jewelry and everything to do, as the trial judge noted, with the persuasive weight of the State's evidence.  We find no mistaken exercise of the judge's discretion.[1]

## II.

As noted, after the verdict defendant moved for a new trial. We provide some additional background.

When defendant was arrested and released on bail, the judge imposed a condition forbidding any contact with the victim.  During trial, the victim's daughter reported to police that she observed defendant drive by the home and use her cellphone apparently to take photographs.  The trial judge issued an arrest warrant charging defendant with contempt, N.J.S.A. 2C:29-9(a), and a different judge approved the State's application for a search warrant to "seize from [defendant's] residence . . . any and all cameras, cell phones, thumb drives and recording devices."

_____

[1] Defendant did not object to the admission of the baseball glove into evidence and, as noted, defense counsel used the glove as an exhibit in urging her acquittal.  Its admission was not error, much less plain error.  See R. 2:10-2 ("Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result[.]").

10

Defendant was arrested the night before the last day of testimony at trial. Police seized various cell phones and electronic devices from her home.

The trial judge arraigned defendant on the contempt charge the next day. After defendant's husband testified but before the defense rested, the judge conducted a thorough voir dire regarding defendant's election not to testify. Among other things, defendant stated she had discussed her options with counsel, was voluntarily deciding not to testify and was not under the influence of any drugs or alcohol.

Several weeks after the jury returned its verdict, defendant moved for a new trial. Defendant's husband certified he obtained information that e-mail communications on his and defendant's electronic devices, which included attorney-client communications, "had been invaded" by an outside IP address while the devices were in police custody. The judge permitted the State's and defendant's experts to access metadata from the devices and subsequently held an evidentiary hearing on the issue. Both experts testified.

After reviewing the party's submissions and testimony, the judge denied defendant's motion and issued an order and written decision on March 9, 2016. She found the State's expert to be more credible, specifically rejecting defendant's expert's assertion that members of the police force regularly and routinely

11

accessed defendant's "phone at distinct intervals every 14 to 15 minutes 24/7."

In Point II, defendant argues her arrest during trial infringed upon her right to testify, and she presented newly-discovered evidence that the State accessed privileged attorney-client communications in violation of her Sixth Amendment rights, requiring a new trial. We find little merit to either contention.

Defense counsel filed a certification in support of the motion for a new trial stating that defendant was highly agitated in court the day after her arrest. The record belies this, both by the absence of any contemporaneous statements made by defense counsel indicating defendant's distress and by defendant's own statements to the judge during the voir dire. The argument warrants no further discussion. R. 2:11-3(e)(2).

A "judge . . . may grant the defendant a new trial if required in the interest of justice." R. 3:20-1. "Rule 3:20-2 permits a defendant to do so 'on the ground of newly-discovered evidence' at any time." State v. Armour, 446 N.J. Super. 295, 305 (App. Div. 2016).

> To meet the standard for a new trial based on newly discovered evidence, defendant must show that the evidence is 1) material, and not "merely" cumulative, impeaching, or contradictory; 2) that the evidence was discovered after completion of the trial and was "not discoverable by reasonable diligence beforehand"; and 3) that the evidence "would

12

> probably change the jury's verdict if a new trial were granted."
>
> [State v. Ways, 180 N.J. 171, 187 (2004) (quoting State v. Carter, 85 N.J. 300, 314 (1981)).]

"[A] motion for a new trial is addressed to the sound discretion of the trial judge, and the exercise of that discretion will not be interfered with on appeal unless a clear abuse has been shown." Armour, supra, 446 N.J. Super. at 306 (quoting State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000) (alteration in original)).

Defendant's motion was not based upon newly-discovered evidence in the traditional sense. She did not present newly discovered, material evidence which, if admitted at trial, would have probably altered the verdict. Rather, defendant's allegations centered on alleged police misconduct that infringed upon her Sixth Amendment rights. See, e.g., State v. Mazzarisi, 440 N.J. Super. 433, 444-446, 449 (App. Div. 2015) (considering whether surreptitious recording of conversations between the defendant and his attorney at police station was a violation of the Sixth Amendment).

However, defendant ignores the judge's rejection of the essential premise of her argument. After listening to the testimony and assessing the credibility of the experts, the judge concluded that police had never accessed defendant's electronic devices in the first instance. We defer to the judges factual

13

findings because they are "supported by sufficient credible evidence in the record." State v. Elders, 192 N.J. 224, 243 (2007).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14