**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0748-16T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

HAROLD MILLER, a/k/a WAKEEM
MILLER and WAKEEM DIGGS,

    Defendant-Appellant.

_____

Submitted May 16, 2018 — Decided June 14, 2018

Before Judges Alvarez and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 14-10-1166 and 15-01-0070.

Joseph E. Krakora, Public Defender, attorney for appellant (Michele E. Friedman, Assistant Deputy Public Defender, of counsel and on the brief).

Andrew C. Carey, Middlesex County Prosecutor, attorney for respondent (Patrick F. Galdieri, II, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Harold Miller appeals from his convictions and sentences, following the Law Division's denial of his motions to compel discovery, for a <u>Franks</u>[1] hearing, and to suppress evidence. Having considered the parties' arguments in light of the record and applicable legal standards, we affirm the denial of the motions and the convictions but remand for resentencing.

I.

We discern the following facts from the record. Members of the Anti-Crime Unit of the New Brunswick Police Department received multiple complaints from a concerned citizen regarding narcotics activity. According to the citizen, individuals known to him or her as Bryan Arline and Harold Miller were selling heroin and cocaine from their second floor apartment (the Apartment) located in a two-story residential building in New Brunswick (the Building). The citizen further stated Arline and Miller transported the drugs to and from the Apartment in a green Acura and a green Cadillac.

Based on this information, on May 5, 2014, Detective Joshua Alexander conducted surveillance of the Building. Alexander observed Arline pull up to the front of the Building in a green Acura. Another individual, later identified as Michal Alegre,

---

[1] <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).

arrived separately in a black Honda.  Alegre entered the Building and remained inside for less than five minutes before exiting and quickly driving away.

Alexander then observed Dwayne Lambert exit the Building, look inside the trunk of Arline's Acura, go back inside the Building, and leave about twenty minutes later.  Shortly thereafter, Alegre returned to the Building in the same Honda and went inside.  After remaining inside for less than five minutes, Alegre went outside and spoke to Lambert.  Alegre and Lambert went back inside the Building.  Two minutes later, Alegre left the Building and drove away.

Sometime thereafter, Alexander spoke with a reliable confidential informant (CI).  The CI confirmed narcotics sales by individuals known to him or her as Bryan and Harold from the Apartment.  The CI confirmed Bryan and Harold frequently drove a green Acura and a green Cadillac to transport drugs to the Apartment.  The CI advised he or she personally observed Bryan and Harold selling heroin and cocaine inside the Apartment.

Three controlled buys were made by the CI at the Apartment. Two involved Lambert and the other involved Arline.  On May 14, 2014, Alexander applied for and obtained a search warrant for the Apartment and the persons of Lambert and Arline but not Miller.

The following day, prior to executing the search warrant, Alexander and Sergeant John Quick observed Alegre arrive in her black Honda. Alegre went inside the Building where she remained for less than ten minutes before exiting with Arline. Alegre entered her vehicle and Arline leaned into the vehicle for a brief conversation. When Alegre drove off, Quick advised Detectives Robert Bogdanski and Rosario Maimone to stop Alegre because she was driving with a suspended license and registration.

Bogdanski and Maimone followed Alegre to a gas station. Maimone told Alegre he stopped her for driving with a suspended license and registration. Alegre began to cry and said she had to use the bathroom. Maimone told her she could use the bathroom as soon as they were done. Alegre then stated, "Ok, ok, ok, I have a little bit of heroin on me and a set." She turned over seven bags of heroin marked "Brick Mansion," a hypodermic needle, and a shoe lace from her jacket pocket. At police headquarters, Alegre gave a videotaped statement, during which she stated she bought seven bags of heroin that day from "Jamal," and had previously bought heroin from "Dowop." Alegre identified a photograph of Miller as the man she knew as "Jamal," the man she had purchased heroin from that day. Quick knew "Jamal" was Miller and "Dowop" was Lambert from prior investigations.

A-0748-16T2

While still outside the Building, Alexander observed Arline exit with an unidentified female wearing scrubs. Alexander followed them to Robert Wood Johnson Hospital. The female went inside and Arline left on a bicycle towards Plum Street. Quick decided to stop Arline. When Quick and Detective Karlo Sarmiento exited their van and announced "Police," Arline fled on his bike. The officers chased Arline to the Building. Arline entered the Building but was unable to open the door to the Apartment. He then reached into his pockets and threw thirty-eight decks of heroin and thirty dollars into a nearby crate, which were recovered by Quick.

After knocking and announcing, Sarmiento gained access to the Apartment with a ram and entered it with Detective Walcott. Walcott apprehended Lambert in the dining room. Sarmiento proceeded to the bathroom where he found Miller hiding in the bathtub. Sarmiento apprehended Miller, brought him to the kitchen, ordered him to the ground, and handcuffed him.

Sarmiento then conducted a protective search of Miller during which he felt a bulge created by objects inside Miller's front right pants pocket. The search revealed a bag of cocaine in his left front pants pocket and two bags of heroin in his right front pants pocket containing 100 decks of heroin labeled "Brick Mansion." Meanwhile, Quick apprehended Arline and brought him

A-0748-16T2

into the Apartment. By the time Alexander entered the Apartment, all three suspects were handcuffed and sitting on the kitchen floor. Alexander observed Miller attempt to discard five decks of heroin labeled "Brick Mansion" that he had removed from the back pocket of his pants. Alexander then found an additional forty decks of heroin and $225 in the same back pocket. The police also recovered a red plastic bag used to hold currency from Miller's bedroom and $1686.75 from Miller's bedroom closet.

A canine unit alerted positive for narcotics during a sweep of the Apartment and the green Cadillac. Miller gave consent to search the Cadillac, but the detectives did not find any contraband.

During the search of the remainder of the Apartment, the detectives recovered four bags of cocaine, a plate and razor with cocaine residue, two digital scales, two boxes of baking soda, and a bag containing sandwich bags from the kitchen. They recovered another bag of cocaine from the landing near the front door and a bag containing Buprenorphine Hydrochloride pills and empty heroin decks from another bedroom. They also recovered narcotics paraphernalia, empty heroin decks, and a cell phone from Lambert's bedroom.

On October 22, 2014, a grand jury returned Indictment No. 14-10-1166, charging Miller, Arline, and Lambert with: third-degree

conspiracy to possess heroin and cocaine with the intent to distribute, N.J.S.A. 2C:35-5 and 2C:5-2 (count one); third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1) (count two); third-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3) (count three); third-degree possession of cocaine with intent to distribute in a school zone, N.J.S.A. 2C:35-5(a) and N.J.S.A. 2C:35-7 (count four); third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1) (count five); third-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3) (count six); third-degree possession of heroin with intent to distribute in a school zone, N.J.S.A. 2C:35-5(a) and N.J.S.A. 2C:35-7 (count seven).[2]

This same indictment also charged Miller alone with: third-degree distribution of heroin, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3) (count nine); and third-degree distribution of heroin in a school zone, N.J.S.A. 2C:35-5(a) and N.J.S.A. 2C:35-7 (count ten).

Additionally, on January 21, 2015, a grand jury returned Indictment No. 15-01-0070, charging Miller with: second-degree

---

[2] Arline and Lambert were co-defendants on Indictment No. 14-10-1166, but are not parties to this appeal.

conspiracy to commit robbery, N.J.S.A. 2C:15-1(a)(1) and N.J.S.A. 2C:5-2 (count one); second-degree robbery, N.J.S.A. 2C:15-1(a)(1) (count two); and third-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(1) (count three).[3]

In May 2015, Miller moved to compel discovery in connection with the controlled dangerous substance (CDS) offenses, seeking disclosure of: (1) all documents relating to the three controlled buys described in the search warrant affidavit; (2) the identity of the concerned citizen; (3) all information relating to any credibility findings of the police officers involved, including any materials relating to disciplinary proceedings and findings against members of the narcotics team; and (4) any recorded testimony during the search warrant application.

The State represented none of the information relating to the controlled buys would be presented by the State in its case-in-chief. The State also indicated the police still actively used the surveillance location and disclosure would result in the loss of the location for future surveillance.

The trial court heard oral argument on July 15, 2015, and denied Miller's motion in an August 25, 2015 order, which included

---

[3]  The robbery occurred on July 30, 2014, when defendant forcibly grabbed and attempted to take property from the victim.

a comprehensive statement of reasons. Miller does not appeal from that order.

The judge noted there were no controlled buys involving Miller and he was not charged with any offenses occurring prior to the execution of the search warrant. At trial, Miller could cross-examine the officers who conducted the surveillance regarding their distance, elevation, line of sight, and any visual obstructions. He concluded Miller did not make a substantial showing of a need for disclosure of the surveillance location in order to be able to conduct his defense.

The judge found Rule 3:13-3(e) protected the identity of the concerned citizen and safeguarding the citizen from physical threats and harm warranted withholding his or her identity. He noted the defense "simply asserts that the identity of the concerned citizen is necessary to challenge the search by arguing the warrant was obtained through false information."

As to disclosure of the personnel files, the judge rejected Miller's argument that disclosure was necessary to test credibility, finding defendant "failed to demonstrate how any of the officers' personnel files are relevant, material, or exculpatory." The judge concluded Miller had not shown any "logical connection between the officers' personnel files and any fact in issue." The judge also noted a recent in camera review

of Quick's personnel file in an unrelated case revealed nothing relevant or material with regard to his credibility. He held "the mere possibility" that the "personnel files might include helpful information, unsupported by the facts, is insufficient to justify an in camera review let alone disclosure" of the files.

On January 8, 2016, Miller moved to: (1) suppress the evidence seized from him during a warrantless search; (2) for a Franks hearing to determine the validity of the search warrant; and (3) for leave to use information relating to the controlled buys conducted by Alexander at trial to show the sales were made by co-defendants and not Miller.

A different judge heard oral argument on April 29, 2016, and denied the motion in its entirety in a comprehensive written opinion. As to the motion to suppress, the judge noted the search warrant is presumed valid and Miller had not overcome that presumption. The judge noted a valid warrant to search for contraband gives limited authority to the police to detain the occupants of the premises while the search is conducted. Accordingly, she found defendant's initial detention during the execution of the search warrant to be lawful.

As to the results of the protective search conducted by Sarmiento, the judge reasoned:

Considering the totality of the circumstances, the [c]ourt finds that it was reasonable for Detective Sarmiento to do a protective search of Mr. Miller's person to ensure that he was not armed, and there was no risk to officer safety while they searched the apartment pursuant to a search warrant. As such one bag of cocaine and 100 decks of heroin found on Mr. Miller as a result of a valid protective search will not be suppressed.

With regard to the additional items seized from Miller, the judge stated:

Additionally, a more thorough search of Mr. Miller was conducted later in the kitchen when the officers observed Mr. Miller attempting to discard five decks of heroin from his back pocket. Because the officers had previously discovered cocaine and heroin on Mr. Miller's person, he was subject to arrest at that point in time. Thus, the subsequent search of Mr. Miller's person is lawful as a search incident to arrest. The additional evidence found on Mr. Miller's person, 45 decks of heroin and $225.00 in cash, will also not be suppressed.

However, even assuming the protective search and the later search incident to arrest was invalid, under the doctrine of inevitable discovery, the evidence found on Mr. Miller's person would have been discovered lawfully as a search incident to a lawful arrest as the search of the residence, including Mr. Miller's bedroom, revealed drugs, paraphernalia, cash, and packing material.

. . . .

The [c]ourt is satisfied that probable cause existed to arrest Mr. Miller as a result of the evidence recovered after the search of [the Apartment] was completed as contraband

11

A-0748-16T2

was discovered in the common areas of Mr. Miller's residence, as well as in his bedroom.

Once a valid arrest has been effectuated, a defendant's seizure automatically justifies a warrantless search of the defendant. State v. Goodwin, 173 N.J. 583, 598 (2002). Therefore, the police would have discovered the evidence on Mr. Miller's person wholly independent from any prior unlawful search of his person.

The judge also found Miller did not meet the threshold for a Franks hearing as he had "not made a substantial preliminary showing that the affiant, either deliberately or with reckless disregard for the truth, procured the warrant."

The judge held non-disclosure in the affidavit of the quantity of narcotics purchased, the purchase price, and any field testing to be insufficient to warrant a Franks hearing because that information "is not necessarily probative of a deliberate falsehood or reckless disregard for the truth necessary to meet the burden required for a Franks hearing."

The judge noted it was undisputed Miller did not participate in any of the controlled buys and was not charged with any offenses arising out of the controlled buys. Moreover, the officers were not present during the controlled buys. The judge found no "connection between the discovery sought and the ability to satisfy the Franks standard." The judge also concluded that even if she excised all of the information in the search warrant affidavit

regarding the controlled buys, the remaining portions of the affidavit still established probable cause.

As to the need to question Alexander during a <u>Franks</u> hearing, the judge stated Miller "failed to meet [his] burden by either attacking the warrant or suggesting material facts which are disputed." The judge characterized the request as a "fishing expedition which is completely contrary to the purpose served by a <u>Franks</u> hearing."

Following the denial of his motions, Miller entered into a plea agreement, pleading guilty to third-degree possession of heroin with intent to distribute and second-degree robbery in exchange for a recommended sentence of an extended seven-year prison term subject to a forty-two-month period of parole ineligibility pursuant to N.J.S.A. 2C:43-6(f) on the CDS count, a concurrent five-year prison term subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, on the robbery count, and dismissal of the remaining charges.

At sentencing, Miller argued for a four-year NERA term on the robbery count, claiming the court should find mitigating factors two (defendant did not contemplate his conduct would cause serious harm), four (there were substantial grounds tending to excuse or justify defendant's conduct), six (defendant will compensate the

13 <span style="float:right">A-0748-16T2</span>

victim for his conduct or will participate in a program of community service), eight (defendant's conduct was the result of circumstances unlikely to recur), and eleven (imprisonment would entail excessive hardship to defendant or his dependents). N.J.S.A. 2C:44-1(b)(2), (4), (6), (8), and (11).

The judge found aggravating factors three (risk defendant will commit another offense), five (substantial likelihood defendant is involved in organized criminal activity), six (extent of defendant's prior criminal record and seriousness of offenses of which he has been convicted), nine (need for deterrence), and eleven (imposition of a fine without imposing a term of imprisonment would be perceived as part of the cost of doing business). N.J.S.A. 2C:44-1(a)(3), (5), (6), (9), and (11). The judge found no mitigating factors.

The judge sentenced Miller in accordance with the terms of the negotiated plea agreement, noting Miller had an extensive prior record of fourteen criminal convictions, including multiple drug offenses,[4] four municipal court convictions, and thirteen adjudications of juvenile delinquency.

---

[4] Miller does not contest he had been previously convicted of distribution of CDS and possession of CDS with intent to distribute, rendering him subject to a mandatory extended term pursuant to N.J.S.A. 2C:43-6(f)

With respect to the CDS count, the judge indicated the mandatory extended term with parole ineligibility was imposed pursuant to N.J.S.A. 2C:43-6(f). The judge found aggravating factor five applied because "there is a likelihood that the defendant is involved in organized crime, because there is no evidence that he has manufactured the drugs that were found in his possession." While the judge stated "the aggravating factors do substantially outweigh the mitigating factors," the judgment of conviction states the aggravating factors "outweigh" the mitigating factors.

The judge incorporated the same aggravating and mitigating factors on the robbery count that she applied on the CDS count. Accordingly, the judgment of conviction listed aggravating factors three, five, six, nine, and eleven, no mitigating factors, and stated the aggravating factors "outweigh" the mitigating factors. However, an amended judgment of conviction deleted aggravating factor five, stating "it was not found at time of sentencing."[5] This appeal followed.

On appeal, defendant raises the following points:

---

[5] "A trial court's oral opinion normally controls over an inconsistent judgment of conviction." State v. Vasquez, 374 N.J. Super. 252, 270 (App. Div. 2005) (citing State v. Warmbrun, 277 N.J. Super. 51, 58 n.2 (App. Div. 1994)); accord State v. Pohlabel, 40 N.J. Super. 416, 423 (App. Div. 1956).

POINT I

THE MOTION COURT COMMITTED REVERSIBLE ERROR WHEN DENYING THE DEFENSE'S REQUEST FOR AN EVIDENTIARY HEARING WITH RESPECT TO THE WARRANTLESS SEARCH OF MR. MILLER'S PERSON, NOTWITHSTANDING MATERIAL FACTS IN DISPUTE.

POINT II

THE MOTION COURT ERRED IN DENYING THE DEFENSE'S REQUEST FOR A HEARING PURSUANT TO FRANKS V. DELAWARE.

POINT III

THIS COURT SHOULD REMAND THE MATTER FOR RESENTENCING BECAUSE THE SENTENCING COURT ERRONEOUSLY FOUND AGGRAVATING FACTORS FIVE AND ELEVEN.

> A. The Court Improperly Found Aggravating Factor Five Based on the Absence of Proof that Mr. Miller Manufactured the Third-Degree Weight of CDS.

> B. The Court Erroneously Found Aggravating Factor Eleven Because It Was Not Weighing the Imposition of a Non-Custodial Sentence.

II.

We affirm the denial of the motion to compel discovery, motion to suppress evidence, and application for a Franks hearing substantially for the reasons expressed by the trial court in its comprehensive and well-reasoned written decisions. We add the following comments.

16                                                    A-0748-16T2

Certain well-established principles guide our analysis. Although we normally grant deference to the findings of fact made by a trial judge in connection with a motion to suppress, there was no evidentiary hearing in this case. State v. Elders, 192 N.J. 224, 243-44 (2007). Instead, the judge relied on the contents of Alexander's affidavit and the supplemental investigation reports prepared by Alexander, Quick, Maimone, and Sarmiento. A reviewing court "may only consider whether the motion to suppress was properly decided based on the evidence presented at that time." State v. Gibson, 318 N.J. Super. 1, 9 (App. Div. 1999) (quoting State v. Jordan, 115 N.J. Super. 73, 76 (App. Div. 1971)).

"A trial court's interpretation of the law . . . and the consequences that flow from established facts are not entitled to any special deference." State v. Gamble, 218 N.J. 412, 425 (2014) (citing State v. Gandhi, 201 N.J. 161, 176 (2010); Manalapan Realty v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). A trial court's legal conclusions are reviewed de novo. Ibid. (citing Gandhi, 201 N.J. at 176).

We first address Miller's argument that the trial court erred by denying his application for a Franks hearing. We review a trial judge's ruling regarding the need for an evidentiary hearing for abuse of discretion. State v. Broom-Smith, 406 N.J. Super. 228, 239 (App. Div. 2009).

A reviewing court gives substantial deference to a judge's determination that probable cause existed to issue a search warrant. State v. Mosner, 407 N.J. Super. 40, 61 (App. Div. 2009). "A search warrant is presumed to be valid, and defendant bears the burden of demonstrating that the warrant was issued without probable cause[.]" Id. at 61 (alteration in original) (quoting State v. Evers, 175 N.J. 355, 381 (2003)). Probable cause may be based upon information received from informants, so long as there is "substantial evidence in the record to support the informant's statements." State v. Keyes, 184 N.J. 541, 555 (2005). "Doubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" Id. at 554 (quoting State v. Jones, 179 N.J. 377, 389 (2004)).

A Franks hearing is required when a defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." Franks, 438 U.S. at 155-56; see also State v. Howery, 80 N.J. 563, 583 n.4 (1979) (stating a Franks hearing "is required only if the defendant can make a substantial preliminary showing of perjury").

In order to make a substantial preliminary showing, defendant must "allege 'deliberate falsehood or reckless disregard for the truth,' and those allegations must be supported by an offer of proof." Howery, 80 N.J. at 583 n.4. "[A] Franks hearing is not directed at picking apart minor technical problems with a warrant application," but rather, "it is aimed at warrants obtained through intentional wrongdoing by law enforcement agents." Broom-Smith, 406 N.J. Super. at 240. Finally, a Franks hearing should not be used as a "fishing expedition" or an attempt to learn the identity of a confidential informant. Id. at 239.

Here, there was no need for a Franks hearing because Miller failed to make a substantial showing of falsity or material omission in the warrant affidavit. He did not point to specific portions of the affidavit that are claimed to be untrue. See Howery, 80 N.J. at 567. He has not demonstrated deliberate falsehood or reckless disregard for the truth. Moreover, Alexander's affidavit provides explicit detail concerning the alleged drug activity at the Apartment, which he corroborated through surveillance. Miller proffered no facts undermining the factual assertions in the affidavit. On this record, a Franks hearing was not required. See Broom-Smith, 406 N.J. Super. at 240.

We next address Miller's argument that the trial court erred by denying his request for an evidentiary hearing on the suppression motion. We review a trial judge's ruling denying an evidentiary hearing for abuse of discretion. Id. at 239.

Testimony must be taken during a suppression motion a hearing if material facts are in dispute. R. 3:5-7(c). When a defendant moves to suppress evidence seized during a warrantless search, the State must file "a brief, including a statement of the facts as it alleges them to be" and the defendant must then file "a brief and counter statement of facts." R. 3:5-7(b).

"It is only when the defendant's counter statement places material facts in dispute that an evidentiary hearing is required." State v. Green, 346 N.J. Super. 87, 90 (App. Div. 2001) (citing State v. Hewins, 166 N.J. Super. 210, 213-15 (Law Div. 1979), aff'd, 178 N.J. Super. 360 (App. Div. 1981)). In Green, we emphasized "[t]he mere allegation of a warrantless search, with the attendant burden of proof on the State to justify same, does not place material issues in dispute, nor does defendant's assertion that he denies the truth of the State's allegations." Id. at 91 (citing Hewins, 166 N.J. Super. at 214). "In the absence of factual allegations to support the claim that the search and seizure were illegal, a hearing [is] not required . . . ." State v. Kadonsky, 288 N.J. Super. 41, 46 (App. Div. 1996).

A defendant's counterstatement of facts must present "something more than the naked conclusion that the warrantless search was illegal, in order to obtain an evidentiary hearing pursuant to [Rule] 3:5-7(c)." Hewins, 166 N.J. Super at 215.

> The rule also seeks to avoid the time-consuming taking of testimony solely for the purpose of affording defense counsel additional discovery, and an opportunity to examine the State's witnesses in advance of trial. The motion to suppress is available to defendant in order to resolve questions concerning the validity of a search and/or seizure; it is not just another discovery device.
>
> [Id. at 214.]

Here, Miller disputes he possessed the drugs police allege he had on his person or discarded and claimed a hearing was necessary to determine the timeline of when the drugs were found. The denial that he physically possessed or discarded the drugs that were seized does not constitute a material fact in dispute with regard to whether the search of his person was illegal. Just as an unconstitutional search is not rendered valid because it produces contraband, a valid search is not rendered unconstitutional because it did not result in the seizure of contraband.

While physical possession of the drugs is germane to whether Miller is guilty of possession of CDS, an issue that he could have

21

fully explored at trial, it is not determinative of whether the police had a sufficient basis to conduct a valid protective search or search incident to arrest. The validity of the search of defendant's pockets turns on the facts leading up to the search, not on whether the search results in the recovery of contraband. Hence, defendant did not establish a disputed material fact with regard to the propriety of the protective search.[6]

The trial court also applied the inevitable discovery doctrine. The doctrine is an exception to the exclusionary rule that permits evidence to be admitted in a criminal case, even though it was obtained unlawfully, when the government can show that discovery of the evidence by lawful means was inevitable. State v. Holland, 176 N.J. 344, 361-62 (2003). The doctrine is based on the recognition that:

> the exclusionary rule [is] not served by excluding evidence that, but for the misconduct, the police inevitably would have discovered. If the evidence would have been obtained lawfully and properly without the misconduct, exclusion of the evidence would put the prosecution in a worse position than if no illegality had transpired.
>
> [State v. Sugar, 100 N.J. 214, 237 (1985).]

---

[6] We note the Miller's brief states: "Mr. Miller's person was searched, and CDS and cash were recovered from his pants pocket during the execution of the search warrant."

In order to invoke the inevitable discovery doctrine, the State must prove by clear and convincing evidence that:

> (1) proper, normal and specific investigatory procedures would have been pursued in order to complete the investigation of the case; (2) under all of the surrounding relevant circumstances the pursuit of those procedures would have inevitably resulted in the discovery of the evidence; and (3) the discovery of the evidence through the use of such procedures would have occurred wholly independently of the discovery of such evidence by unlawful means.
>
> [Id. at 238 (citing Wayne R. LaFave, Search and Seizure § 11.4 at 624 (1978)).]

Guided by these principles, we conclude the judge properly applied the inevitable discovery doctrine's three-prong test and found the State met its burden. See ibid.; State v. Maltese, 222 N.J. 525, 552 (2015).

Miller was not a guest; he resided in the Apartment. The recovery of cocaine, a plate and a razor with cocaine residue, digital scales, and packaging materials from common areas of the Apartment, in conjunction with the facts revealed by the investigation preceding the execution of the search warrant, provided probable cause to arrest Miller. Therefore, an independent, valid basis existed to conduct a search incident to arrest before the protective search was conducted. See State v. O'Neal, 190 N.J. 601, 614-15 (2007); State in re R.M., 408 N.J.

23

Super. 304, 311 (App. Div. 2009). To be sure, there was abundant probable cause to arrest Miller based on the results of the search of the Apartment even if the protective search did not reveal heroin and cocaine in his pockets. A search incident to arrest would have followed. Thus, even assuming the protective search was invalid, the heroin and cocaine seized from Miller's pockets would be admissible under the inevitable discovery doctrine since it would have been discovered by a lawful search incident to arrest. See Maltese, 222 N.J. at 551-52.

We discern no abuse of discretion by the trial court in denying defendant's motion to suppress without an evidentiary hearing. The judge's factual findings and legal conclusions are amply supported by the record.

## III.

Finally, we address Miller's argument that he should be resentenced because the trial court erred by applying aggravating factors five and eleven. The State concedes the trial court should not have applied these factors.

Aggravating and mitigating factors are used to determine the length of imprisonment within the applicable statutory range for the offense in question. See State v. Case, 220 N.J. 49, 64-65 (2014); State v. Fuentes, 217 N.J. 57, 72-73 (2014). An appellate court may remand for resentencing where the trial court "considers

an aggravating factor that is inappropriate to a particular defendant or to the offense at issue." Fuentes, 217 N.J. at 70 (citing State v. Pineda, 119 N.J. 621, 628 (1990)).

After considering the presentence investigation report, Miller's extensive prior history, and the offenses to which he pled guilty, the judge found aggravating factors three, five, six, nine, and eleven. She found no mitigating factors, and that the aggravating factors substantially outweighed the non-existent mitigating factors. On appeal, defendant does not argue the trial court erred by not finding any mitigating factors.

A person convicted of possession of CDS with intent to distribute, who has previously been convicted of distributing or possessing CDS with intent to distribute, shall be sentenced to an extended term. N.J.S.A. 2C:43-6(f). The judge sentenced defendant to a seven-year term, subject to a thirty-six-month period of parole ineligibility, in accordance with the plea agreement. The sentencing range for the extended term was five to ten years, N.J.S.A. 2C:43-7(a)(4), subject to a minimum period of parole ineligibility "fixed at, or between, one-third and one-half of the sentence imposed by the court or three years, whichever is greater," N.J.S.A. 2C:43-6(f).

Because the court determines the length of the extended term and the period of parole ineligibility based on its assessment of

the aggravating and mitigating factors, eliminating aggravating factors five and eleven from consideration could potentially reduce the length of the prison term and the period of parole ineligibility. Consequently, we are constrained to vacate the sentence on count six of Indictment No. 14-10-1166, and remand for resentencing consistent with this opinion.

Similarly, the consideration of aggravating factors five and eleven potentially affected the imposition of a five-year NERA term on the robbery count, rather than the four-year NERA term sought by defendant. Accordingly, we likewise remand count two of Indictment No. 15-01-0070 for resentencing.

## IV.

In summary, we affirm the denial of the motion to suppress without an evidentiary hearing or a <u>Franks</u> hearing and the convictions on both counts. We vacate the sentences and remand for resentencing on both counts. We express no opinion as to the appropriate sentences on either count.[7]

---

[7] Sentencing Miller to a four-year NERA term on the robbery count can only occur if he is sentenced one degree lower as a third-degree offense based on a finding by the trial court that it is "clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice demands." N.J.S.A. 2C:44-1(f)(2). "The reasons justifying a downgrade must be 'compelling,' and something in addition to and separate from, the mitigating factors that substantially outweigh the aggravating factors." <u>State v. Megargel</u>, 143 N.J. 484, 505 (1996).

A-0748-16T2

Affirmed in part and vacated and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0748-16T2