**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3275-17T4
      A-3382-17T4

STATE OF NEW JERSEY,

  Plaintiff-Respondent,

v.

GEORGE T. THOMPSON,

  Defendant-Appellant.

_____

STATE OF NEW JERSEY,

  Plaintiff-Respondent,

v.

BRIAN D. THOMPSON,
a/k/a BOO THOMPSON,

  Defendant-Appellant.

_____

Submitted May 6, 2019 – Decided June 19, 2019

Before Judges Messano and Rose.

On appeal from Superior Court of New Jersey, Law Division, Cape May County, Indictment No. 15-12-1009.

Stefankiewicz & Belasco, LLC, attorneys for appellant in A-3275-17 (David A. Stefankiewicz, on the briefs).

Wayne Powell, attorney for appellant in A-3382-17.

Jeffrey H. Sutherland, Cape May County Prosecutor, attorney for respondent (Gretchen A. Pickering, Assistant Prosecutor, of counsel and on the briefs).

PER CURIAM

These two appeals, calendared back-to-back and consolidated for purposes of our opinion, arise out of a single indictment charging defendants George T. Thompson and his brother, Brian D. Thompson,[1] with several weapons-related offenses. The charges ensued from an early morning 9-1-1 call reporting gunshots were fired near an intersection in Middle Township. Defendants lived with their mother in a nearby home.

Following the denial of their joint motion to suppress evidence, defendants pled guilty to separate counts of the indictment, charging second-degree unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b) and N.J.S.A. 2C:58-4, pursuant to negotiated plea agreements with the State.

---

[1] Because defendants share the same last name, we refer to them throughout this opinion by their first names. In doing so, we intend no disrespect.

On February 15, 2018, the court sentenced both defendants in accordance with the State's recommendations. Defendants now appeal from a June 17, 2016 Law Division order denying their suppression motion; neither defendant challenges his sentence.

On appeal, George raises the following points for our consideration:

POINT I

THE POLICE TRESPASSED UPON THE CURTILAGE OF THE [THOMPSON] HOME TO CONDUCT THE SEARCH OF THE VEHICLES THEREON, AND, THEREFORE, THE EVIDENCE WHICH DERIVED FROM THIS ILLEGAL ENTRY MUST BE SUPPRESSED.

POINT II

THE POLICE UNLAWFULLY ENTERED THE THOMPSON RESIDENCE WITHOUT WARRANT [SIC] AND ALL EVIDENCE WHICH DERIVED THEREFROM MUST BE SUPPRESSED.

POINT III

EVEN IF THE COURT CONCLUDES THAT GEORGE'S CAR WAS NOT ON PROTECTED CURTILAGE THE SEARCH OF IT AND THE ENSUING WARRANT MUST BE EXCLUDED AS FRUITS OF THE POISONOUS TREE DUE TO THE ANTECEDENT ILLEGALITY.

POINT IV

THE SEARCH WARRANT AS TO GEORGE'S CAR WAS TAINTED BY FALSE, MISLEADING AND ILL-GOTTEN EVIDENCE AND IS, THEREFORE, INVALID AND/OR OTHERWISE ENTITLES [GEORGE] TO A TESTIMONIAL HEARING TO CHALLENGE THE INFORMATION THEREIN.

POINT V

EVEN WITH THE FALSE, MISLEADING AND ILL-GOTTEN EVIDENCE THE SEARCH WARRANT APPLICATION STILL LACKED SUFFICIENT INFORMATION TO ESTABLISH PROBABLE CAUSE TO SEARCH GEORGE'S CAR AND THEREFORE ALL EVIDENCE SEIZED THEREFROM MUST BE SUPPRESSED.

Brian offers the following arguments in his brief:

POINT I

THE COURT BELOW COMMITTED ERROR BY DENYING [BRIAN]'S MOTION TO SUPPRESS THE EVIDENCE SEIZED

A. THE WARRANTLESS ENTRY ONTO THE CURTILAGE OF [THE THOMPSON] HOME AND SEARCH OF A VEHICLE LOCATED THERE CONSTITUTED A VIOLATION OF [BRIAN'S] CONSTITUTIONAL RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES.

B. POLICE WERE WITHOUT VALID CONSENT TO ENTER THE [THOMPSON] HOME AND ANY EVIDENCE RESULTING FROM THE UNLAWFUL INTRUSION SHOULD HAVE BEEN SUPPRESSED.

4

C. THE ARREST OF [BRIAN] WAS WITHOUT PROBABLE CAUSE AND WAS OTHERWISE UNLAWFUL AS POLICE WERE WITHOUT A WARRANT TO ARREST HIM IN HIS HOME.

We reject defendants' contentions, with the exception of George's Point II and Brian's Point IB, finding police entry into the Thompson home was unlawful and the evidence seized therein should have been suppressed. We therefore affirm in part and reverse in part.

I.

We derive the salient facts from the record developed at the suppression hearing. Three members of the Middle Township Police Department (MTPD) testified on behalf of the State: Patrolman Joseph Gamble; Corporal Phillip Johnson; and Detective Kenneth Martin. Among other items, the State moved into evidence, without objection, photographs and an aerial view of the exterior of the Thompson residence and surrounding area. Defendants did not testify nor present any evidence.

At approximately 2:55 a.m. on August 9, 2015, MTPD officers were dispatched to an intersection in Middle Township, after a caller reported gunshots had been fired from the direction of "a large house party" in the area. Upon his arrival at the scene, Officer Jonas McInnis radioed that he heard a gunshot. About twenty to fifty people "were scattering" from the area when

police approached.  They were unwilling to speak with police.  Gamble met with McInnis, who "was trying to gain control of some of the subjects in the surrounding area."  McInnis had detained one suspect and told Gamble he was also looking for Brian, who was known to the MTPD for his "adverse contacts" and because he had been the victim of a shooting.

While searching for Brian, Gamble recovered a spent cartridge amid debris in the street near the corner of the intersection.  Gamble testified that the cartridge looked as though it recently had been discharged because it was clean and shiny.  The cartridge was labeled "9X19."

Gamble then noticed Brian, who was standing next to a blue Mercury sport utility vehicle (SUV).  The SUV was parked on the grass in a side lot more than twelve yards from the Thompson home and about ten to fifteen feet from the street.  Other vehicles were parked in the lot.  Gamble approached Brian, asking "why he was at the vehicle" which "made [Brian] walk away" from the car.  Using his flashlight to see whether anyone was inside the car, Gamble noticed an AR-15 rifle laying across the rear seat.  Dispatch confirmed the SUV was registered to Brian.

After Gamble observed the rifle, he saw Brian walking toward the front door of the Thompson residence.  Gamble and McInnis then knocked on the

door, which was answered by defendants' mother. While the officers were speaking with her, they saw Brian standing in the rear of the living room, about twenty feet from the door. The officers asked Brian to step outside. Instead of complying with their request, Brian "stood there. He reached his hand in his pocket, threw a few items on the ground behind him as [the officers] went in to get him." Those items included two .223 ammunition rounds, which matched an AR-15 rifle. Gamble had taken "one step" inside the residence when he saw Brian toss the items to the floor. The officers immediately arrested Brian inside the home and recovered an additional .223 round during a protective pat down.

On cross-examination by Brian's counsel, Gamble said defendants' mother gave consent for the officers to enter the home while she was speaking with McInnis at the front door, but he could not recall their exact conversation. Gamble acknowledged his report did not mention he and McInnis entered the Thompson residence based on the consent of defendants' mother. No testimony was elicited as to whether defendants' mother was advised she had the right to refuse consent.

Meanwhile, MTPD officers looked inside most of the cars in the vicinity, especially in areas "where people were walking." A black Lincoln sedan, registered to George, was parked partially "at the foot of the [Thompson]

driveway . . . almost on the street." The front of the car was parked on the Thompson's lawn, appearing as though it had "crashed into the tree . . . in the front yard." Using a flashlight, Johnson looked inside the sedan and saw "a bag on the floor . . . [that] looked like it contained . . . a box . . . [of] bullets."

Thereafter, police towed Brian's SUV and George's sedan to the MTPD impound lot while Martin applied for warrants to search both vehicles. Pertinent to this appeal, Martin's affidavits indicated Brian's vehicle was "parked in a vacant lot" next to the Thompson property. The affidavits also stated the MTPD "observed a black duffle bag containing an ammunition box labeled 9X19" on the floor of George's vehicle.

Following issuance of the search warrants, officers recovered from Brian's SUV the AR-15 assault rifle Gamble had observed on the rear seat; a .38 caliber revolver; and a case, scope and ammunition box for the AR-15 rifle. A search of George's sedan revealed a .45 caliber handgun, two loaded magazines for that handgun, twenty-six rounds of nine millimeter bullets, and thirty-six rounds of hollow-point bullets. The nine millimeter ammunition matched the 9X19 spent cartridge Gamble recovered earlier from the street.

After the hearing concluded, the motion judge reserved decision. Thereafter, the judge rendered an oral opinion, denying defendants' motion. On

June 16, 2016, the judge issued a supplemental written opinion correcting certain factual findings, but reaching the same conclusion.

After reviewing the record and canvassing the relevant case law, the judge made credibility and factual findings, which were largely consistent with the recitation of facts set forth above. The judge found "all three law enforcement officers who testified were highly credible and reliable." Ultimately, the judge determined both motor vehicles were located outside the protected curtilage of the Thompson home; the officers had reasonable suspicion to stop Brian; defendants' mother granted the officers permission to enter the Thompson home; and any discrepancies in Martin's search warrant affidavit did not necessitate a Franks[2] hearing.

## II.

Well-settled legal principles guide our analysis. Our review of a trial court's decision on a suppression motion is circumscribed. We defer to the court's factual and credibility findings, as long as they are supported by sufficient credible evidence in the record. State v. Dunbar, 229 N.J. 521, 538 (2017). Deference is afforded because the "findings of the trial judge . . . are substantially influenced by his [or her] opportunity to hear and see the witnesses

---

[2] Franks v. Delaware, 438 U.S. 154 (1978).

and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Reece, 222 N.J. 154, 166 (2015) (first alteration in original) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). We disregard a trial court's factual and credibility findings only if clearly mistaken. State v. Hubbard, 222 N.J. 249, 262 (2015). "We accord no deference, however, to a trial court's interpretation of law, which we review de novo." Dunbar, 229 N.J. at 538.

## A.

Initially, we address defendants' overlapping arguments that their motor vehicles were located on the Thompson home's protected curtilage and, as such, the officers had no right to search the vehicles without first obtaining warrants.

In New Jersey, it is well settled that "[c]ertain lands adjacent to a dwelling called the 'curtilage' have always been viewed as falling within the coverage of the Fourth Amendment." State v. Johnson, 171 N.J. 192, 208 (2002) (alteration in original). However, "[a]n area within the curtilage to which the public is welcome, such as a walkway leading to an entrance to a home, is not afforded Fourth Amendment protection because the resident has given implicit consent to visitors to approach the home that way." State v. Domicz, 188 N.J. 285, 302 (2006); see also Johnson, 171 N.J. at 209 (declaring the Fourth Amendment is not offended "when the police come on to private property to conduct an

A-3275-17T4

investigation or for some other legitimate purpose and restrict their movements to places visitors could be expected to go").  In addition to walkways, curtilage may also include porches and driveways.  Domicz, 188 N.J. at 302.

The appropriate inquiry is whether the officers have intruded into an area the resident seeks to preserve as private.  Accordingly, when the police restrict their movements on private property to places visitors could be expected to enter, observations they make from such vantage points are not protected by the Fourth Amendment.  Johnson, 171 N.J. at 209.  No user of curtilage that can be accessed by multiple persons can have a reasonable expectation of privacy in that area.  Ibid.

As the motion judge recognized here, the extent to which curtilage is protected against unreasonable searches and seizures depends on the well-known factors set forth by the United States Supreme Court in United States v. Dunn (Dunn factors):

> [T]he proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.
>
> [480 U.S. 294, 301 (1987).]

New Jersey courts have utilized the Dunn factors in determining the propriety of a search in curtilage. See Domicz, 188 N.J. at 302; Johnson, 171 N.J. at 208-09; State v. Lane, 393 N.J. Super. 132, 145 (App. Div. 2007).

However, as support for their arguments, defendants cite Collins v. Virginia, ___ U.S. ___, 138 S.Ct. 1663 (2018). Collins, which was decided by the United States Supreme Court nearly two years after the motion judge rendered her decision here, specifically addressed whether the automobile exception applies to a vehicle parked in a partially enclosed section of a residential driveway. Id. at 1670-73. Notably, the defendant's motorcycle was parked under a tarp in the top portion of the driveway, which was "enclosed on two sides by a brick wall about the height of a car and [on] a third side by the house." Id. at 1670. Under those facts, the Court determined the curtilage of the house included the top portion of the driveway because it was "an area adjacent to the home and to which the activity of home life extends." Id. at 1671 (internal quotation marks omitted) (quoting Florida v. Jardines, 569 U.S. 1, 7 (2013)).

Conversely, the facts of the present case support the motion judge's conclusion that neither vehicle was located within the Thompson home's

12

protected curtilage. In particular, applying the <u>Dunn</u> factors to Brian's SUV, the judge aptly determined the vehicle

> was outside the curtilage because, as Gamble testified, it was several yards away from the house itself, not within an area enclosed by the house fence, there was no objective indication that the spot where the car was parked was used for intimate activities associated with the home, and there was no protection from observation by those standing on the sidewalk or in the street. Indeed, other individuals even had their cars parked around the same spot and were coming and going as officers arrived on the scene.

The judge also found "[f]or the same reasons" that George's sedan "was not located in the protect[ed] curtilage either."

From our review of the record, we conclude the totality of the circumstances sufficiently supports the judge's findings, which were based on the judge's assessment of the demeanor of the witnesses as they testified and the judge's feel of the case. Accordingly, we defer to her findings. <u>Reece</u>, 222 N.J. at 166. We simply note George's car was even more removed from the curtilage of the Thompson home than was Brian's. As Gamble testified, the sedan was "barely on the driveway . . . part[ly] on the driveway, part[ly] on the grassy area[.]"

Moreover, police had a duty to investigate the early morning 9-1-1 call of gunshots fired from the direction of a large party in a residential neighborhood.

That call was corroborated by the events that quickly unfolded after officers were dispatched to the scene: McInnis heard a gunshot; the crowd scattered and was uncooperative; Gamble recovered a "fresh spent round"; and Brian walked away from Gamble when questioned about his reason for being near the SUV. Accordingly, the officers' entry onto the Thompson property also was justified by the exigency of those circumstances. See State v. Hathaway, 222 N.J. 453, 468 (2015) (quoting State v. Pena-Flores, 198 N.J. 6, 30 (2009)) (recognizing "'exigent circumstances are present when law enforcement officers do not have sufficient time to obtain any form of warrant' because of the immediate and urgent circumstances confronting them").

B.

Next, we consider defendants' arguments that police unlawfully entered the Thompson home. Defendants maintain the State failed to establish their mother permitted police to enter the home: George cites Gamble's inability to recount the conversation between McInnis and defendants' mother, during which she allegedly gave consent; Brian contends the State failed to establish her consent was voluntary and that she was informed she had a right to refuse consent to enter.

14

Under New Jersey law, the police are not obligated to advise a person of his or her right to refuse, at least where, as here, the person being asked for consent is not in custody. State v. Johnson, 68 N.J. 349, 354 (1975). Interpreting Johnson on precisely this point, we have explicitly held "Johnson does not compel the police to specifically advise the property owner . . . of the affirmative right to refuse an inspection." State v. Farmer, 366 N.J. Super. 307, 314 (App. Div. 2004).

Nonetheless, "[w]hile the State need not prove that the third person was informed of a right to refuse consent, the State has the burden of demonstrating knowledge on the part of the third party that he had a choice in the matter." State v. Douglas, 204 N.J. Super. 265, 277 (App. Div. 1985) (citations omitted). "[T]he State is required to prove voluntariness by clear and positive testimony." Ibid. (citing State v. King, 44 N.J. 346, 352 (1965)); see also State v. Chapman, 332 N.J. Super. 452, 466 (App. Div. 2000) (alteration in original) ("Voluntariness is a question of fact to be determined from all the circumstances . . . ."); Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973).

In the present case, the judge concluded defendants' mother granted the officers permission to enter the Thompson home. The judge did not, however, make any specific findings regarding the voluntariness of her consent. From the

scant testimony elicited from Gamble, who did not speak directly with defendants' mother nor specifically recall the conversation between her and McInnis, it is difficult to discern whether she knew she "had a choice in the matter." See Douglas, 204 N.J. Super. at 277. Indeed, the prosecutor did not ask Gamble any questions whatsoever relating to consent. Nor was any testimony adduced about defendants' mother's demeanor or the duration of her conversation with McInnis before police entered the Thompson home. Rather, the sequence of events suggests Gamble saw Brian in the living room as soon as defendants' mother opened the door; Gamble asked Brian to exit; instead Brian discarded the ammunition, all of which occurred while Gamble had one step inside the door. The record therefore does not establish, directly or circumstantially, that defendants' mother voluntarily permitted police to enter her residence.

Accordingly, we are constrained to suppress the evidence seized from the Thompson home. Although we disagree with the trial judge's determination regarding consent, we hasten to add our decision has no impact on the validity of the searches of either vehicle.[3] Excising the references to the ammunition

---

[3] Arguably, police could have seized the AR-15 rifle from Brian's SUV without first obtaining a search warrant pursuant to the plain-view exception to the

seized from the Thompson home from both search warrant affidavits does not

defeat probable cause for their issuance.  As we have long recognized

> otherwise admissible evidence should not be excluded
> because a portion of the warrant authorizes the seizure
> of [evidence] . . . in excess of that justified by the
> supporting affidavit.  The proper remedy is 'redaction,'
> the striking of those portions of the warrant which are
> invalid for want of probable cause, and preserving those
> severable portions that satisfy the Fourth Amendment,
> and our state constitutional counterpart.
>
> [State v. Burnett, 232 N.J. Super. 211, 217 (App. Div.
> 1989).]

See also United States v. Christine, 687 F.2d 749, 754 (3d Cir. 1982) ("Materials

seized under the authority of those parts of the warrant struck for invalidity must

be suppressed, but the court need not suppress materials seized pursuant to the

valid portions of the warrant.").

## III.

Lastly, we address George's challenges to the validity of the search

warrant for his sedan and his renewed request for a Franks hearing.  George

claims Martin's affidavit failed to establish probable because, among other

things, it contained two material misstatements: (1) the misidentification of the

---

warrant requirement.  See, e.g., State v. Gonzales, 227 N.J. 77, 102-03 (2016);
State v. Mann, 203 N.J. 328, 341 (2010).

grassy area on which Brian's car was located as a "vacant lot"; and (2) the reference to the specific type of ammunition, i.e., "9X19," when Johnson's report generically referenced that he viewed "a box of ammunition" in George's car.

We are unpersuaded by George's challenges to the search warrant affidavit, recognizing we review a trial judge's ruling regarding the need for a Franks evidentiary hearing for abuse of discretion. See State v. Broom-Smith, 406 N.J. Super. 228, 239 (App. Div. 2009). We do not substitute our "own judgment for that of the trial court, unless the trial court's ruling was so wide of the mark that a manifest denial of justice resulted." State v. Brown, 170 N.J. 138, 147 (2001) (internal quotation marks omitted).

A reviewing court gives substantial deference to a judge's determination that probable cause existed to issue a search warrant. State v. Mosner, 407 N.J. Super. 40, 61 (App. Div. 2009). "A search warrant is presumed to be valid, and defendant bears the burden of demonstrating that the warrant was issued without probable cause[.]" Ibid. (alteration in original) (quoting State v. Evers, 175 N.J. 355, 381 (2003)). "Doubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" State v. Keyes, 184 N.J. 541, 554 (2005) (quoting State v. Jones, 179 N.J. 377, 389 (2004)).

For that reason, a defendant is only entitled to a <u>Franks</u> evidentiary hearing to challenge the veracity of a warrant affidavit when he "makes a substantial preliminary showing" of either "material misstatements[,]" <u>State v. Howery</u>, 80 N.J. 563, 566 (1979), or "[m]aterial omissions[,]" <u>State v. Marshall</u>, 148 N.J. 89, 193 (1997), in a search warrant affidavit. <u>See also</u> Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 3 on <u>R.</u> 3:5-3 (2019). A misstatement is material if the warrant affidavit "no longer contains facts sufficient to establish probable cause" in its absence. <u>Howery</u>, 80 N.J. at 568 (citing <u>Franks</u>, 438 U.S. at 171). However, if probable cause exists despite the errant information, the search warrant remains valid and a hearing is not necessary. <u>See</u> <u>ibid.</u>

"The limitations imposed by <u>Franks</u> are not insignificant." <u>Id.</u> at 567. The burden placed on the defendant is onerous because "a <u>Franks</u> hearing is not directed at picking apart minor technical problems with a warrant application[,]" but rather, "it is aimed at warrants obtained through intentional wrongdoing by law enforcement agents." <u>Broom-Smith</u>, 406 N.J. Super. at 240. Thus, a defendant must identify "with specificity the portions of the warrant that are claimed to be untrue" and support the allegations with "an offer of proof including reliable statements by witnesses, [which] must be proved by a preponderance of the evidence." <u>Howery</u>, 80 N.J. at 567-68 (citation omitted).

In the present case, the motion judge concluded George failed to meet his burden for a <u>Franks</u> hearing. Specifically addressing the affidavit's inaccurate reference to the "vacant lot," the judge found,

> there was no fraud on the part of law enforcement in applying for the warrant and there were no misrepresentations made. The information was reliable to the best of the officer's ability, supporting claims were provided to the issuing judge, the information was fresh, and . . . there was no illegally obtained information in the affidavit.

We agree. During cross-examination, Martin explained his familiarity with the lot: "I've worked [for MTPD] for [sixteen] years. I've always just seen that as the vacant lot next to the Thompson house. I've never . . . had any reason to believe it was part of their property." The aerial photograph of the Thompson property and vicinity corroborates Martin's testimony. Indeed, the record is devoid of any indication that the lot was developed, enclosed, or otherwise indicative of residential use. Accordingly, Martin's misnaming of the lot was an inconsequential misstatement and a far cry from the "material misstatements" contemplated by <u>Franks</u>. <u>See</u> 438 U.S. at 171.

Nor are we persuaded George established the affidavit's specific reference to the "ammunition box labeled 9X19" was a material misstatement or falsehood. To support his argument, George claims Johnson equivocated about

20

his ability to observe the box of ammunition on the floor of George's sedan. Seizing on Johnson's answers during cross-examination that the box "looked similar to a box of ammunition[,]"[4] and he told "that" to Martin, George maintains Martin "prematurely viewed" the box of ammunition before obtaining the search warrant. His argument, however, is unsupported by the record. George failed to produce sufficiently reliable proof of Martin's purported wrongdoing. Rather, George relies on parsed portions of Johnson's testimony. Notably, George failed to question Martin whatsoever about the source of the statement.

Although the motion judge did not specifically address George's argument concerning the box of ammunition, she determined Martin was a reliable and credible witness, and George generally failed to demonstrate Martin acted in bad faith or made false and misleading statements to obtain the warrants. See State v. Martinez, 387 N.J. Super. 129, 140 (App. Div. 2006) (deferring to the judge's credibility findings that there was no intentional falsehood or reckless disregard

---

[4] To further support his argument, George filed a reply appendix, including a poor-quality photograph of the bag containing ammunition. The photograph is unmarked and, as such, it is unclear whether it is the same photograph that was shown to Johnson at the hearing, i.e., a photograph marked "2D-3" for identification. Regardless, because George did not move any exhibits into evidence at the hearing, the photograph is inappropriate for our review. See Zaman v. Felton, 219 N.J. 199, 226-27 (2014).

of truth in a search warrant affidavit). Because defendant did not make a substantial preliminary showing of a material misstatement in the search warrant affidavit, we discern no abuse of discretion by the trial judge.

To the extent we have not specifically addressed George's remaining arguments, we find they lack sufficient merit to warrant discussion in our opinion. R. 2:11-3(e)(2).

Affirmed in part; reversed in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION