NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-1121-18T4
                 A-1122-18T4
                 A-1123-18T4

STATE OF NEW JERSEY,

       Plaintiff-Respondent,

v.

SAMUEL W. CHEN,

       Defendant-Appellant.

_____

STATE OF NEW JERSEY,

       Plaintiff-Respondent,

v.

COLIN P. QUINN,

       Defendant-Appellant.

_____

STATE OF NEW JERSEY,

       Plaintiff-Respondent,

v.

MICHAEL T. SANTITORO,

       Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
> **November 24, 2020**
> **APPELLATE DIVISION**

Argued October 1, 2020 – Decided November 24, 2020

Before Judges Sumners, Geiger and Mitterhoff.

On appeal from the Superior Court of New Jersey, Middlesex County, Accusation Nos. 17-04-0261, 17-04-0263, and 17-04-0262.

Alan L. Zegas, argued the cause for appellants (Law Offices of Alan L. Zegas; Alan L. Zegas, of counsel and on the briefs; Joshua M. Nahum, on the briefs).

Nancy A. Hulett, Assistant Prosecutor, argued the cause for respondents (Yolanda Ciccone, Middlesex County Prosecutor; Nancy A. Hulett, of counsel and on the brief).

The opinion of the court was delivered by

SUMNERS, JR., J.A.D.

These consolidated appeals require us to determine whether the State can deny defendants' admission into the pretrial intervention program (PTI or program), N.J.S.A. 2C:43-12, after they spurned the State's offer to consider admission if they agreed to serve time in jail; defendants had all been released on their own recognizance (ROR).

Defendants Samuel W. Chen, Colin P. Quinn, and Michael T. Santitoro were each indicted on one count of third-degree arson, N.J.S.A. 2C:17-1(b)(2), for starting a fire in a garbage disposal bin. Unbeknownst to them, it contained a propane tank, resulting in an explosion causing significant damage to

numerous cars and a fence. Over the ensuing four months, defendants refused the Middlesex County Prosecutor's Office's (Prosecutor's Office) proposal that their PTI applications include an agreement to serve time in jail. Thereafter, on the same grounds, the Prosecutor's Office separately advised each defendant that their PTI applications were denied based upon factors set forth in N.J.S.A. 2C:43-12. Defendants subsequently entered into plea agreements in which they pled guilty to amended charges of third-degree criminal mischief, N.J.S.A. 2C:17-3. They each were sentenced to a four-year term of noncustodial probation.

Pursuing rights preserved in their plea agreements, defendants unsuccessfully appealed their PTI rejections to the Law Division. The court determined defendants did not establish by clear and convincing evidence that the Prosecutor's Office's refusal to admit them into PTI was "a patent and gross abuse of discretion or arbitrary and irrational."

Before us, defendants jointly argue:

> POINT I
>
> THE TRIAL JUDGE ERRED IN FAILING TO DIRECT THE DEFENDANTS' ADMISSION INTO PTI BECAUSE THE PROSECUTOR'S REQUIREMENT OF AN ILLEGAL CONDITION WAS A PATENT AND GROSS ABUSE OF DISCRETION.

POINT II

THE TRIAL JUDGE ERRED IN FAILING TO
DIRECT THE DEFENDANTS' ADMISSION INTO
PTI BECAUSE THE PROSECUTOR'S
EVALUATION OF THE RELEVANT STATUTORY
FACTORS DEMONSTRATES THAT THE DENIAL
WAS A PATENT AND GROSS ABUSE OF
DISCRETION.

> A. The PTI Determination Is Invalid Because the
> Prosecutor Improperly Focused on the Nature of
> the Offense.

> B. The Prosecutor's Office's PTI Determination
> Is Invalid Because It Failed to Treat the
> Defendants as Individuals.

We reverse. The Prosecutor's Office abused its discretion by tainting the

PTI application process when it required defendants to agree to serve jail time

as a means to gain admission. Imposing the condition of jail time for PTI

admission is not expressly permitted or prohibited in N.J.S.A. 2C:43-12, Rule

3:28, or the PTI Guidelines. We conclude, however, it is illegal because to vest

such authority to the Prosecutor's Office would give it powers contrary to the

Legislature's intent in creating the program. Accordingly, the trial court shall

enter orders vacating defendants' guilty pleas and admitting them into PTI.

I.

The Fire

A-1121-18T4

On November 19, 2016, recently graduated Rutgers University students Quinn and Santitoro, while under the influence of alcohol, took a textbook and set it on fire in a dumpster in the rear parking lot of their New Brunswick fraternity house.[1] Quinn then lit a mattress that was in the dumpster. Chen, a member of the same fraternity and also a recent Rutgers University graduate, who had been drinking, joined the mischief by throwing pieces of drywall into the fire with Quinn and Santitoro.

The fire caused a propane tank concealed underneath the mattress to explode, resulting in burns to Quinn and Chen. After an unsuccessful attempt to put out the fire with a bucket of water, defendants fled. The fire spread, damaging the fraternity house fence and nine vehicles in the fraternity house parking lot and an adjacent parking lot. The fire department responded to the scene and extinguished the fire.

The Prosecution

The day of the fire, each defendant was charged with one count of third-degree arson, N.J.S.A. 2C:17-1(b)(1), and one count of conspiracy to commit arson, N.J.S.A. 2C:5-2(a)(1). They subsequently applied for PTI. On February

---

[1] Based on the record provided, it is unclear which defendant set the textbook on fire.

A-1121-18T4

14, 2017, the Middlesex County Probation Department recommended to the Prosecutor's Office that defendants' applications be approved. Defendants had no juvenile or adult criminal history and were gainfully employed.

The Prosecutor's Office, however, did not agree. In initial discussions, according to Quinn's counsel's[2] March 7 letter to the negotiating assistant prosecutor, defendants were advised they could be admitted into PTI if they served 180 days in county jail by agreeing to revoke their ROR status. Defendants counter-proposed performing 150 hours each of community service related to the offense such as working with victims of fires and volunteering with fire departments.

In a March 10 letter addressing concerns raised in a conversation with the assistant prosecutor related to the March 7 correspondence, defense counsel proposed no jail time if defendants performed community service at a prison and at one of six specified hospitals.

---

[2] Throughout the negotiations regarding defendants' PTI applications, Quinn's counsel, on behalf of all defendants, took the lead in corresponding with the Prosecutor's Office to confirm discussions and advance counter-proposals. Hereinafter, references to defense counsel denotes Quinn's counsel.

The assistant prosecutor rejected defendants' counter-offer but advised his office would sign off on PTI if defendants served thirty days in jail and performed 150 hours each of community service.

In an April 3 letter to the First Assistant Prosecutor, defense counsel memorialized the Prosecutor's Office's new proposal discussed in a March 20 meeting: that each defendant serve thirty days in jail, along with performing 150 hours of community service. Counsel requested reconsideration of the jail time condition. Additionally, counsel pointed out the difficulty in getting the trial court to "implement incarceration . . . where [defendants] pose no flight risk and have attended all proceedings in their present ROR status[,]" and in finding "a [c]ounty or other prison facility [to] cooperate in this highly unusual approach."

While defendants' PTI applications were pending, the Prosecutor's Office presented the charges against them to a grand jury on April 13, 2017, resulting in the indictments.

Two months later, defendants advised the Prosecutor's Office of a potential way to satisfy the jail-time condition to gain PTI admission. In a June 9 letter to the First Assistant Prosecutor, counsel proposed downgrading defendants' charges to municipal court so they could enter into a weekend jail program, such as the Sheriff's Labor Assistance Program or Learning Assistance

Program, and serve fifteen weekends in lieu of serving thirty consecutive days in county jail. The Prosecutor's Office rejected the proposal.

Each defendant was subsequently denied admission into PTI. The Prosecutor's Office's July 20 written rejection recited the following factors set forth in N.J.S.A. 2C:43-12(e) as weighing strongly against admission:

> (1) The nature of the offense;
>
> (2) The facts of the case;
>
> (3) The motivation and age of the defendant;
>
> (7) The needs and interests of the victim and society;
>
> (10) Whether or not the crime is of an assaultive or violent nature, whether in the criminal act itself or in the possible injurious consequences of such behavior;
>
> (11) Consideration of whether or not prosecution would exacerbate the social problem that led to the applicant's criminal act;
>
> (14) Whether or not the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution;
>
> (16) Whether or not the applicant's participation in pretrial intervention will adversely affect the prosecution of codefendants; and
>
> (17) Whether or not the harm done to society by abandoning criminal prosecution would outweigh the benefits to society from channeling an offender into a supervisory treatment program.

8

The letter made no mention of the parties' prior four months of negotiations regarding the Prosecutor's Office's demand that defendants serve jail time as a condition to enter PTI.

PTI Denial Appeal to Law Division

Defendants appealed the denial of their PTI applications to the Law Division. During argument before the trial judge, defendants contended the Prosecutor's Office conditioned their admission into PTI, which was illegal and tainted the PTI application process.

The Prosecutor's Office denied defendants' service of jail time was a condition for their PTI admission. The assistant prosecutor claimed the jail time negotiations "[were] a way for us to get to it from a difficult point, because [defendants] didn't meet the conditions for PTI. They didn't meet them from the beginning." The assistant prosecutor further asserted that jail time negotiations were "irrelevant," yet "a creative way maybe to resolve a problem," and that jail time "was not some quid pro quo" to get into PTI.

The parties also disputed the soundness of the reasons stated by the Prosecutor's Office in denying defendants' PTI applications; the Prosecutor's Office contended it looked at the totality of the offense in which defendants recklessly started a fire in a populated area and left the scene.

On February 26, 2018, the judge executed separate orders, together with separate but similar written decisions, denying each defendant's appeal. As to each defendant, the judge wrote:

> While it may have been inappropriate for the State to suggest that the State would more favorably consider [d]efendants' PTI applications if [d]efendants served time in the county jail, the issue before the [c]ourt remains whether or not [d]efendants clearly and convincingly established that the [State's] decision to deny PTI constituted a patent and gross abuse of discretion.

The judge ruled defendants did not meet their burden of proving the Prosecutor's Office's denial of their PTI applications was a patent and gross abuse of discretion, and detailed the reasonableness of the N.J.S.A. 2C:43-12(e) factors the Prosecutor's Office applied in reaching its decisions. The judge concluded:

> [T]he [c]ourt "does not have the authority in PTI matters to substitute [its] discretion for that of the prosecutor." State v. Von Smith, 177 N.J. Super. 203, 208 (App. Div. 1980).
>
> [T]he State considered all of the relevant factors in its decision to deny [d]efendants['] PTI application . . . . The [c]ourt finds that the State did not make a clear error in judgment, such that remand is required. Nor did the State's decision to not admit [d]efendant into PTI clearly subvert the goals underlying the program.

II.

We begin with the understanding that "PTI is a 'diversionary program through which certain offenders are able to avoid criminal prosecution by receiving early rehabilitative services expected to deter future criminal behavior.'" State v. Roseman, 221 N.J. 611, 621 (2015) (quoting State v. Nwobu, 139 N.J. 236, 240 (1995)). PTI programs are governed both by statute and court rule, which "generally mirror[] each other." Ibid. (citation omitted).

The criteria for admission to PTI, as well as the procedures concerning applications for admission to the program, are set forth in N.J.S.A. 2C:43-12 to -13 (the PTI statute). At the time of defendants' applications, Rule 3:28 and the corresponding "Guidelines for Operation of Pretrial Intervention in New Jersey" (PTI Guidelines) also governed PTI applications. See RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 473 n.4 (2018) (Rule 3:28 and PTI Guidelines repealed and replaced effective July 1, 2018, by Rule 3:28-1 to -10).

The PTI statute prescribes a non-exclusive list of seventeen criteria a prosecutor must consider in determining a defendant's admission into the program. N.J.S.A. 2C:43-12(e). This "include[s] 'the details of the case, defendant's motives, age, past criminal record, standing in the community, and

11

employment performance[.]'" Roseman, 221 N.J. at 621 (second alteration in original) (quoting State v. Watkins, 193 N.J. 507, 520 (2008)).

A prosecutor's PTI decision must be "an individualized assessment of the defendant considering his or her 'amenability to correction' and potential 'responsiveness to rehabilitation.'" Id. at 621-22 (quoting Watkins, 193 N.J. at 520). Whether to permit a defendant's diversion to PTI "is a quintessentially prosecutorial function[,]" State v. Wallace, 146 N.J. 576, 582 (1996), and our review of a PTI rejection is "severely limited[,]" State v. Negran, 178 N.J. 73, 82 (2003). "Prosecutorial discretion in this context is critical for two reasons. First, because it is the fundamental responsibility of the prosecutor to decide whom to prosecute, and second, because it is a primary purpose of PTI to augment, not diminish, a prosecutor's options." Nwobu, 139 N.J. at 246 (quoting State v. Kraft, 265 N.J. Super. 106, 111 (App. Div. 1993)). Prosecutors are therefore afforded "broad discretion" to decide whether to divert a defendant into PTI. State v. K.S., 220 N.J. 190, 199 (2015). An appellate court reviews a prosecutor's PTI decision through the lens of "enhanced deference." State v. Brooks, 175 N.J. 215, 225 (2002).

Nonetheless, a prosecutor's decision is subject to judicial review. In order "to overturn a prosecutor's decision to exclude a defendant from the program,

the defendant must 'clearly and convincingly' show that the decision was a 'patent and gross abuse of . . . discretion.'" K.S., 220 N.J. at 200 (quoting Wallace, 146 N.J. at 582)." A patent and gross abuse of discretion is defined as a decision that 'has gone so wide of the mark sought to be accomplished by PTI that fundamental fairness and justice require judicial intervention.'" Watkins, 193 N.J. at 520 (citation omitted). A prosecutor's abuse of discretion requires a defendant to show that admission into PTI was denied because it:

> [(a)] [was not premised upon a] consider[ation of] all relevant factors, [(b)] was based on irrelevant or inappropriate factors, or [(c)] constituted a "clear error in judgment." Additionally, an abuse of discretion is "patent and gross," if it is shown "that the prosecutorial error complained of will clearly subvert the goals underlying Pretrial Intervention."
>
> [Nwobu, 139 N.J. at 247 (quoting State v. Bender, 80 N.J. 84, 93 (1979)).]

### III.

PTI statutes and court rules regarding the criteria for admission make no mention of a prosecutor's authority to require a defendant to serve jail time as a condition to be admitted into the program. N.J.S.A. 2C:43-12 and -13; Rule 3:28. Where statutory language is not clear, "we may turn to extrinsic evidence." State v. Frank, 445 N.J. Super. 98, 105 (App. Div. 2016) (citing In re Kollman, 210 N.J. 557, 568 (2012)). "[L]egislative history is examined where the statute's

13

plain language is unclear or can be given 'more than one possible meaning[.]'" Id. at 105-06 (quoting Marino v. Marino, 200 N.J. 315, 329 (2009)). "When all is said and done[,] the matter of statutory construction . . . will not justly turn on literalisms, technisms or the so-called formal rules of interpretation; it will justly turn on the breadth of the objectives of the legislation and the commonsen[s]e of the situation." Jersey City Chapter of Prop. Owner's Protective Ass'n v. City Council of Jersey City, 55 N.J. 86, 100 (1969).

Before determining the legislative objectives of PTI, we must first address defendants' argument that the Prosecutor's Office conditioned PTI admission on their consent to serve jail time. The court chose not to address this issue, opining that it was only necessary to decide whether the Prosecutor's Office properly applied the PTI statute. We disagree.

The Prosecutor's Office contends it did not believe defendants were appropriate for PTI based on the offenses, and that some jail time was appropriate despite defendants' efforts to strike a balance that did not require it. In support of the claim, the Prosecutor's Office conceded at oral argument before us that admission into PTI conditioned upon jail time was not authorized by law.

The record belies the Prosecutor's Office's position that it did not condition defendants' PTI admission upon serving a short jail stint. Serving jail

time was not defendants' offer to gain admission into the program. Before formally deciding defendants' PTI applications, the Prosecutor's Office proposed that defendants serve some jail time as "a way" to get into PTI, and then negotiated with them over the course of four months in an effort to have them agree.

The Prosecutor's Office's contention that defendants were not candidates for PTI is illogical considering its attempts to get them to agree to serve jail time as part of its negotiations with defendants regarding their admission. It was only after defendants rejected the jail proposals of 180 days, and then thirty days, followed by the First Assistant Prosecutor's refusal to downgrade the indicted charges to municipal court to possibly facilitate weekend jail time, that the Prosecutor's Office rejected defendants' PTI applications outright. Significantly, at no point did the Prosecutor's Office dispute representations in Quinn counsel's letters that defendants had to serve jail time as a condition for PTI admission. Thus, we agree with defendants that serving jail time was a condition imposed by the Prosecutor's Office to admit them into PTI.

Turning to the legislative history and language of the PTI statute and Rule 3:28, there is nothing that specifically addresses whether a prosecutor can impose the condition of jail time for a defendant's admittance into PTI. That

said, in examining the statutory language and policy goals of PTI, we are convinced defendants' PTI admission should not have been conditioned on serving jail time.

N.J.S.A. 2C:43-12(a) sets forth the public policy goals of PTI:

> (1) Provide applicants, on an equal basis, with opportunities to avoid ordinary prosecution by receiving early rehabilitative services or supervision, when such services or supervision can reasonably be expected to deter future criminal behavior by an applicant, and when there is apparent causal connection between the offense charged and the rehabilitative or supervisory need, without which cause both the alleged offense and the need to prosecute might not have occurred; or
>
> (2) Provide an alternative to prosecution for applicants who might be harmed by the imposition of criminal sanctions as presently administered, when such an alternative can be expected to serve as sufficient sanction to deter criminal conduct; or
>
> (3) Provide a mechanism for permitting the least burdensome form of prosecution possible for defendants charged with "victimless" offenses, other than defendants who were public officers or employees charged with offenses that involved or touched their office or employment; or
>
> (4) Provide assistance to criminal calendars in order to focus expenditure of criminal justice resources on matters involving serious criminality and severe correctional problems; or

(5) Provide deterrence of future criminal or disorderly behavior by an applicant in a program of supervisory treatment.

The same policy goals are expressed in PTI Guideline 1. Guidelines for Operation of Pretrial Intervention in New Jersey, Pressler & Verniero, Current N.J. Court Rules, Guideline 1, following R. 3:28 at 1233 (2017). Guideline 1(b) mirrored the language of N.J.S.A. 2C:43-12(a)(2), and its commentary, "recognizes that diversion in appropriate circumstances can serve as sufficient sanction to deter future criminal conduct." Ibid.

Our case law is further instructive on the policy goals of PTI. PTI "is designed 'to assist in the rehabilitation of worthy defendants, and, in the process, to spare them the rigors of the criminal justice system.'" State v. Randall, 414 N.J. Super. 414, 419 (App. Div. 2010) (quoting Watkins, 193 N.J. at 513). PTI is an "alternative to the traditional system of prosecuting and incarcerating criminal suspects." State v. Leonardis, 71 N.J. 85, 92 (1976). The program is meant to "avoid criminal prosecution." Roseman, 221 N.J. at 621. Although not expressly forbidden, it is illogical to conclude that application of these legislative goals would be furthered by allowing the prosecutor to impose a jail term as a condition for PTI admission.

Our research reveals one published decision involving jail time as part of entry into PTI. In State v. Mosner, 407 N.J. Super. 40, 47 (App. Div. 2009), the defendant was charged with two fourth-degree criminal offenses and five motor vehicle offenses in connection with a hit-and-run snowmobile accident that seriously injured a teenage boy. The defendant's PTI application was rejected when he refused to plead guilty to the five motor vehicle charges, one of which required a mandatory 180-day jail term. Id. at 47, 53. After being found guilty on all charges, he appealed arguing he was improperly denied admittance into PTI. Id. at 48, 53-54. We disagreed, ruling the prosecutor could condition defendant's PTI admission on guilty pleas to all the motor vehicle offenses to achieve the purpose of the PTI statute. Id. at 57.

Mosner, however, is distinguishable. There, the defendant was required to plead to a motor vehicle offense that included a mandatory jail term. In this case, the Prosecutor 's Office imposed a condition of PTI admission that was not based on any determination of guilt. Just as important, the 180-day jail term in Mosner was required by statute, whereas here, the condition of jail time was arbitrarily set by the Prosecutor's Office without any mandatory statutory framework.

We do, on the other hand, find guidance in Justice Handler's dissent in State v. DeMarco, 107 N.J. 562, 583 (1987). In discussing the prosecutor's authority under PTI and legislative intent behind the program, he writes:

> This authority encompasses broadly the discretion to consider a host of factors bearing on eligibility for PTI. This does not, however, include the use of PTI as an extension of the penal laws. PTI is an alternative to the criminal justice system; it is not a supplement to criminal prosecution. This strongly suggests that a prosecutor may not use PTI to achieve the ends of criminal prosecution that encompass punishment and deterrence. It is within this frame of reference that the discretion of the prosecutor will permit the imposition of conditions on PTI enrollment-if they bear a rational relationship to the rehabilitation of diverted offenders. This discretion, however, does not enable a prosecutor to use PTI as a vehicle for the imposition of discipline that is otherwise vested in other governmental and regulatory entities.

By imposing jail time as a condition for defendant's PTI admission, the Prosecutor's Office is essentially imposing a penal sanction not found in the PTI statute or elsewhere, thereby exceeding its legal authority.

Based upon the legislative intent and spirit of PTI to divert a defendant who satisfies the criteria articulated in the PTI statute and Rule 3:28 from the criminal process, we are convinced the Prosecutor's Office imposed an unlawful condition by requiring the service of jail time for defendants' admission into PTI. Clearly, the policy goal of avoiding traditional prosecution through PTI

A-1121-18T4

would be subverted by one of the most onerous consequences of all – incarceration. The Prosecutor's Office had no legal right to impose some form of penal punishment as a condition for defendants' admission into PTI.

As mentioned, the Prosecutor's Office acknowledged at argument before us that it may not condition a defendant's PTI admission on serving jail time. We are unpersuaded, however, by its contention that defendants were never appropriate candidates for PTI, given the negotiations seeking to compel defendants to serve some jail time. Furthermore, the Prosecutor's Office agreed to a plea deal in which defendants would serve <u>no</u> jail time but receive probation. Considering defendants were ROR, the probation department recommended their acceptance into PTI, and there was no legal authority to require them to serve jail time as a condition to get into PTI, the Prosecutor's Office's denials of their applications were tainted.

Under these circumstances, the Prosecutor's Office patently and grossly abused its discretion in denying defendants' PTI entry because they would not serve jail time. They should be admitted into the program. Accordingly, it is unnecessary to address the Prosecutor's Office's weighing of PTI factors in denying defendants' PTI admission.

Reversed and remanded to vacate defendants' guilty pleas and admit them into PTI.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21